VITELLI & SON *v.* UNITED STATES (No. 1034).[1]

TOMATO PASTE—VEGETABLES PREPARED.

The form of the tomato has been destroyed by the processes to which it has been subjected, it is true, but the elements that make the vegetable valuable as a food, namely, a part of the juice and most of the pulp, remain, and the paste resulting is a prepared vegetable, dutiable under paragraph 252, tariff act of 1909.

United States Court of Customs Appeals, March 25, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30084 (T. D. 32858).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Goods put up in cylindrical tins hermetically sealed and invoiced as tomato paste were assessed for duty as prepared vegetables at 40 per cent ad valorem under the provisions of paragraph 252 of the tariff act of 1909, which paragraph reads as follows:

252. Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared in any way; any of the foregoing not specially provided for in this section, and bean stick or bean cake, miso, and similar products, forty per centum ad valorem.

The importers protested that the merchandise was not prepared vegetables within the meaning of paragraph 252, but that it was a

[1] Reported in T. D. 33313 (24 Treas. Dec., 507).

nonenumerated manufactured article and therefore dutiable at 20 per cent ad valorem under the provisions of paragraph 480, which is as follows:

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

The importation the dutiable status of which is questioned by this proceeding is produced from ripe tomatoes, which are conceded to be vegetables as that term is used in the paragraph under which the goods were assessed. To make tomato paste such as that imported, ripe tomatoes, after washing, are lightly crushed by hand and then allowed to stand in the sun a few days in order that the water content may be reduced by evaporation. The pulpy mass is next pressed through a metal sieve, which catches the seeds and skins, but allows the juice and at least some of the pulp to pass through. After again straining the product to remove as far as possible all fibrous and foreign matter it is boiled down to the required density, when it is packed in tins and is ready to be used in the making of sauces.

Counsel for the appellants contend that the crushing and double straining of the ripe tomato results in the production of a juice which, when boiled down, becomes the concentrated juice of the tomato or an extract of tomato, a product which can not be considered as a "vegetable prepared," especially as it is used in the making of sauces and not as a food. An examination of the sample in evidence, coupled with a careful consideration of the processes employed in making the merchandise in controversy, convinces us that the argument of the appellants is based upon the false premise that the crushing and straining of the tomato produces a pure juice or extract. So far as we can see, the several treatments imposed on the raw material can effect nothing more than a removal of the skin, the seeds, a considerable portion, if not all, of the fibrous material, and a certain percentage of the water natural to the vegetable. That which is left, and which is subsequently put up in tins, is apparently a jam-like substance composed of some of the juice and a very considerable percentage of the pulp of the tomato. One of the importers does testify that the tomatoes after boiling are twice forced through a "grating" *to exclude all ingredients and matter except the juice.* That statement, however, we must accept with some reserve. From a mushy substance, such as crushed boiled tomatoes, something like a pure juice might be obtained by filtering, but certainly it could not be secured by straining the material under pressure. Pressing a pulpy mass of the consistency of well-cooked tomatoes through the

perforations or openings of a strainer or "grating" must of necessity result not only in the passage of juice but of no inconsiderable portion of the much broken pulp as well. This conclusion is borne out by the importer himself, who admitted that some of the pulp does pass through, and by the fact that the article is not a juice at all, but a paste. Indeed the fact that the crushed tomatoes were evaporated and then boiled down to the required density, namely, a paste, seems to be at odds with the idea that the juice and not the pulp was sought by the manufacturer.

By the several processes to which the raw material is successively subjected the vegetable has lost little or nothing save that which is more or less undesirable as a food, namely, the skin, the seeds, and vegetable fiber. With the exception that the article is less watery, it does not differ materially in taste, composition, or appearance from that which would be produced by pressing ordinary boiled tomatoes through the meshes of a fine sieve. Indeed, barring the possible cost of production, the so-called tomato paste might be just as well utilized for food as for the making of sauces. The form of the vegetable has been destroyed, of course, but the elements which make the vegetable valuable as a food, namely, a part of the juice and most of the pulp, remain, and we think the paste is just as much a prepared vegetable as would be mashed potatoes, boiled summer squash, or stewed tomatoes.

The decision of the Board of General Appraisers is *affirmed.*