COLUMBO CO., ANTONINO BADALAMENT v. UNITED STATES (No. 3694)[1]

United States Court of Customs and Patent Appeals, December 4, 1933

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Robert C. O'Grady* and *Reuben Wilson*, special attorneys, of counsel), for the United States.

[1] T.D. 46819.

[Oral argument October 2, 1933, by Mr. Carter and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding tomato paste dutiable, as classified by the collector at the port of New York, as tomatoes prepared or preserved in any manner at 50 per centum ad valorem under paragraph 772 of the Tariff Act of 1930, rather than as paste composed of vegetables under paragraph 775 of that act, as claimed by appellants.

The paragraphs in question read:

PAR. 772. Tomatoes in their natural state, 3 cents per pound; prepared or preserved in any manner, 50 per centum ad valorem.

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; sauces of all kinds, not specially provided for; soy beans, prepared or preserved in any manner; bean stick, miso, bean cake, and similar products, not specially provided for; soups, soup rolls, soup tablets or cubes, and other soup preparations, pastes, balls, puddings, hash, and all similar forms, composed of vegetables or of vegetables and meat or fish, or both, not specially provided for, 35 per centum ad valorem; sauerkraut, 50 per centum ad valorem; pimientos, packed in brine or in oil, or prepared or preserved in any manner, 6 cents per pound.

It appears from the record that the merchandise, which is imported in barrels or tins, is prepared in substantially the following manner: Mashed ripe tomatoes are strained through a sieve into a cheesecloth bag, and permitted to drain for a period of 24 hours or more, "it is left in these cheesecloth bags and is boiled down. Then it is highly salted, put on platters and laid in the sun until it comes of a consistency that can be easily handled by hand." Exhibit 1, which is representative of the merchandise, is soft and plastic, and, no doubt, properly denominated a paste.

It appears from Exhibit 2, the report of a Government chemist, that the involved paste "is composed of partially dried tomatoes or tomato pulp chiefly, salt and a small amount of spices. Salt—15.4%."

There was no evidence introduced on the trial below to show how, or for what purpose, the involved merchandise is used.

After the cause was submitted to the trial court, counsel for appellants, evidently realizing that the question of use was a factor to be considered by the court in a proper determination of the dutiable classification of the merchandise, filed a motion "to reopen the submission" of the cause on the ground that the record was defective. The motion was denied by the court because of failure to state the nature of the defect. Thereafter, counsel filed another motion to "reopen the submission" of the cause, the grounds for the same

being set forth in an affidavit of Mr. Fred J. Carter, one of the attorneys for appellants.   We quote therefrom:

Deponent begs to state that on examining the record in the case at bar he discovered that it was not shown how the merchandise was used and he believes that the use of the merchandise is one of the elements which should be considered by the court in rendering the decision in the case.

Wherefore he prays that the submission in the case may be set aside and the protest restored to the calendar for further trial.

That motion was also denied by the trial court.   The correctness of the court's ruling in that regard is not challenged here.

In its decision, the court below held that, although the *eo nomine* provision for "tomato paste", contained in paragraph 770 of the Tariff Act of 1922, was omitted from the Tariff Act of 1930, because of the fact that the rate of duty on tomatoes in their natural state was increased from one half of 1 cent per pound to 3 cents per pound, and that on tomatoes prepared or preserved in any manner was increased from 15 per centum ad valorem to 50 per centum ad valorem, it must be presumed that the Congress intended to increase the rate of duty on tomato paste; and that the provision for tomato paste had been eliminated from paragraph 772 of the Tariff Act of 1930 "for the purpose of brevity only, in the belief that the language 'tomatoes prepared or preserved in any manner' is sufficiently broad to include tomato paste."

It is contended by counsel for appellants that, as tomato paste was *eo nomine* provided for in paragraph 770 of the Tariff Act of 1922, the failure to include such *eo nomine* provision in the Tariff Act of 1930 indicates that the Congress intended to provide for tomato paste under the provision for pastes composed of vegetables, contained in paragraph 775 of that act; that the Congress definitely distinguished between tomato paste and tomatoes prepared or preserved in paragraph 770, *supra*, and, as there is nothing to indicate a contrary legislative purpose, it must be presumed that the Congress intended to continue such distinction in the Tariff Act of 1930; that the Congress has definitely distinguished between "vegetable pastes and prepared vegetables," in paragraph 775, *supra;* that tomato paste is a manufacture of tomatoes and something more than tomatoes prepared or preserved; and that, therefore, the judgment of the court below should be reversed.

It is contended by counsel for the Government, on the other hand, that tomato paste is tomatoes prepared, and, as such, is more specifically provided for under paragraph 772, than as pastes composed of vegetables under paragraph 775.

The sole issue in the case, expressly so limited by counsel for appellants on the trial below and in this court, is whether the merchandise is dutiable as tomatoes prepared under paragraph 772, as

assessed by the collector, or as "pastes * * * composed of vegetables," under paragraph 775, as claimed by appellants.

On the trial below, it was incumbent upon appellants to establish not only that the collector's classification was wrong, but that the merchandise was dutiable as claimed in the protest. *United States* v. *Silk Association of America*, 16 Ct. Cust. Appls. 566, T. D. 43296.

Accordingly, the first question to be determined, although not raised by counsel for the parties, is whether the involved merchandise is covered by the provisions for "soups, soup rolls, soup tablets or cubes, and other soup preparations, *pastes*, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for," contained in paragraph 775, *supra*. (Italics ours.)

Paragraph 773 of the Tariff Act of 1922, the predecessor of paragraph 775, *supra*, so far as pertinent to the issues here involved, provided for "soups, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for."

In the Summary of Tariff Information, 1921, prepared for the information of the Committee on Finance of the Senate, the United States Tariff Commission stated that the quoted provisions of paragraph 773, *supra*, covered "fancy food preparations of vegetables or of vegetables mixed with meat or fish."

In the Summary of Tariff Information, 1929, prepared for the information and use of the Committee on Ways and Means of the House of Representatives, the United States Tariff Commission, relative to the quoted provisions of paragraph 773, *supra*, among other things, said:

*Description and uses.*—This covers soups, a small amount of puddings, fish balls, and antipastes, and a number of specialty products not provided for elsewhere. The products are mainly of the luxury class; some are special dishes of Asiatics.

It will be observed that the enumerated articles, with which the term "pastes" is associated in the provisions in question, are finished food preparations, and, with the exception of soup rolls and soup tablets or cubes, are designed to be used in the form in which they are imported. The soup preparations, of course, may require the addition of hot water or other liquid to make them edible as soups. In all other respects, however, they are finished food preparations.

In this connection, it is interesting to note that, in paragraph 775, the Congress has distinguished between vegetables "if cut, sliced, or otherwise reduced in size, or if reduced to flour * * *, or *prepared* or preserved *in any other way*," and the articles covered by the provisions for "soups, * * * pastes," etc. (Italics ours.)

It is true, of course, that ordinary tomato paste is tomatoes prepared, and, therefore, a food. See *Vitelli & Son* v. *United States*, 4 Ct. Cust. Appls. 75, T.D. 33313. But, as stated by the Tariff Commission, in the Summary of Tariff Information, 1929, relative to paragraph 770 of the Tariff Act of 1922, tomato paste is used "chiefly" in the preparation of sauces and soups, and, as it is a highly concentrated article, it is considered by some to be "more economical for sauce preparations than tomato pulp, canned tomatoes, or fresh tomatoes." From the foregoing, it would appear, in the absence of evidence to the contrary, that ordinary tomato paste is not a finished food preparation, fancy or otherwise, but a mere material to be used as an ingredient of such preparations.

We are of opinion that, in order to ascertain the meaning and scope of the term "pastes" contained in paragraph 775, the rule of *noscitur a sociis* should be applied, and that giving consideration to that rule of interpretation, and to the legislative history of the provisions in question, it was intended by the Congress to include within that term finished, or substantially finished, food preparations, not mere materials which are used, together with other materials, in the manufacture of such preparations.

As examples of products intended to be covered by the term "pastes," the following articles may be mentioned: Finely ground lobster "in the form of paste, with a small percentage of potato flour * * * 'chicken, ham, and tongue,' 'chicken and ham,' 'turkey and tongue,' and 'ham and tongue.' * * * in the form of paste with a small percentage of potato flour and spices for flavoring purposes." *United States* v. *Richardson*, 13 Ct. Cust. Appls. 280, T.D. 41214.

In view of the fact that the record is silent as to the uses of the involved merchandise, and as there is nothing therein to show that it is a finished, or a substantially finished, food preparation, and not a mere material to be used, together with other materials, in the manufacture of such preparations, we must hold that appellants have failed to make a case. Holding these views, it is unnecessary for us to consider other issues raised by the parties, including the question of whether, under any circumstances, "tomato paste" would be dutiable under the provisions of paragraph 775.

The judgment is *affirmed.*