DEL GAIZO DISTRIBUTING CORP., MENNELLA BROS. INC. *v.* UNITED STATES (No. 3951)[1]

[1] T. D. 48376.

United States Court of Customs and Patent Appeals, June 1, 1936

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellants.
*Joseph R. Jackson*, Assistant Attorney General (*William Whynman*, special attorney, of counsel), for the United States.

[Oral argument April 9, 1936, by Mr. Place and Mr. Whynman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal by importers from a judgment of the United States Customs Court, Third Division, sustaining the classification and duty assessment by the Collector of Customs of merchandise invoiced as tomato sauce. Three suits are involved, they having been consolidated for the purpose of trial. The merchandise is substantially the same in each case and is, according to the brief on behalf of appellants, similar to that which was involved in the cases of *Vitelli & Son* v. *United States*, 4 Ct. Cust. Appls. 75, T. D. 33313; *Schroeder Bros.* v. *United States*, 14 Ct. Cust Appls. 267, T. D. 41882; *F. N. Giavi*, v. *United States*, 18 C. C. P. A. (Customs) 373, T. D. 44618; and *Columbo Co. et al.* v. *United States*, 21 C. C. P. A. (Customs) 302, T. D. 46819.

The collector classified the merchandise and assessed duty under that part of paragraph 772 of the Tariff Act of 1930, which reads:

PAR. 772. Tomatoes * * * ; prepared or preserved in any manner, 50 per centum ad valorem.

The importers protested, the claim finally relied upon being for classification and assessment as "sauces", or in the alternative, as "pastes", under that portion of paragraph 775 of said act which reads:

PAR. 775. * * *; sauces of all kinds, not specially provided for; * * * pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, 35 per centum ad valorem * * *.

A witness called on behalf of the importer described the process of preparing the product here involved as follows:

The tomatoes are first washed, then crushed, and the pulp passed through a series of sieves until all the fibre and seeds and peels are taken off. Then the pulp is dumped in vacuum kettles and boiled under a vacuum until the right consistency is obtained. * * * And then it is taken, put in cans through a filling machine, put in cans, and finished by sterilization.

It was added that the cans are hermetically sealed.

The *Vitelli* case, *supra*, arose under the 1909 tariff act which did not contain a provision for tomatoes *eo nomine*, nor did it contain a

provision for vegetable pastes *eo nomine*. The competing statutory provisions in that case were one for "vegetables * * * prepared in any way" and one for "articles manufactured * * * not [otherwise] provided for * * *." The question of "sauces" was not there raised or considered. The merchandise was there held classifiable as prepared vegetables.

The *Schroeder Bros.* case, *supra*, and the *Giavi* case, *supra* (the latter being, in effect, a retrial of the same issues raised in the former), arose under the Tariff Act of 1922, paragraph 770 of which read:

PAR. 770. Tomatoes in their natural state, one-half of 1 cent per pound; tomato paste, 40 per centum ad valorem; all other, prepared or preserved in any manner, 15 per centum ad valorem.

The claims of importers in those cases were for classification under the last provision, "all other, prepared or preserved in any manner" with an alternative claim under that part of paragraph 773 of the act, reading, " * * * sauces of all kinds, not specially provided for * * *."

In both cases the merchandise was held to have been properly classified as "tomato paste" under the *eo nomine* provision of paragraph 770. In neither case was the claim for classification as "sauces" pressed. In the *Schroeder Bros.* case, *supra*, the opinion says:

* * * As to this [sauces], counsel on both sides agree that it [the merchandise] is not [sauce] and also agree that it is a material from which sauces are made. It therefore becomes unnecessary to consider further the applicability of paragraph 773 * * *.

The opinion in the *Giavi* case, *supra*, followed closely that in the *Schroeder Bros.* case, *supra*, and sauces were not there discussed.

Paragraph 772 of the Tariff Act of 1930, successor to paragraph 770 of the Tariff Act of 1922, does not carry an *eo nomine* provision for tomato paste. Otherwise, the paragraphs are the same, except that the rates of duty were quite materially increased in the 1930 act and the words "all other" appearing before "prepared or preserved" in the 1922 act were eliminated from the 1930 act.

In the *Columbo Co. et al.* case, *supra*, which arose under the Tariff Act of 1930, the claim of the importers was under the same paragraph, 775, which is at issue here, but, as will appear from the opinion, the claim was limited to "pastes," there being no discussion of "sauces." In the instant case importers emphasize the "sauces of all kinds" provision, and it is insisted that upon the record here presented the cases above cited do not present controlling precedents.

Counsel for importers in the *Columbo Co. et al.* case, *supra*, laid great stress upon the fact that Congress had eliminated the *eo nomine* provision for tomato paste from the Tariff Act of 1930, and under the familiar rule that a change in language implies a change in legislative intent, it was argued, as stated in our opinion there, that Congress

"intended to provide for tomato paste under the provision for pastes composed of vegetables, contained in paragraph 775 * * *."

We held that in order to ascertain the tariff meaning of the term "pastes" contained in paragraph 775, the rule of *noscitur a sociis* should be applied and, under this rule, taken in connection with the legislative history of the provisions in question, it was found that—

it was intended by the Congress to include within that term finished, or substantially finished, food preparations, not mere materials which are used, together with other materials, in the manufacture of such preparations.

It was further found that the record was silent as to the uses of the paste there involved and that there was nothing to show that it was a finished, or a substantially finished, food preparation, and not mere material to be used, together with other materials, in the manufacture of such preparations. Hence we held that the importers there had "failed to make a case."

The Government insists that, under the doctrine of *stare decisis*, our decision in the *Columbo Co. et al.* case, *supra*, is here controlling so far as the question of "pastes" is concerned. This contention is sound if it be found here, as was found there, that appellants have failed to make a case. To determine this has required examination of the testimony which was introduced on behalf of appellants respecting the nature and uses of the merchandise. The question of fact is a simple one. In order to make a case (unless, of course, we should be convinced that our holding upon the questions of law in the *Columbo Co. et al.* case, *supra*, was wrong), it was incumbent upon appellants to show that the merchandise is a finished food preparation and not a mere material to be used as an ingredient of food preparations.

We agree with the trial court that no such showing has been made, but that the consensus of the testimony which was offered by importers themselves is that the merchandise "is a material which is used as an ingredient in other preparations."

In the opinion of the trial court (T. D. 47849), the testimony, which in the main was that of experienced chefs, is fairly and adequately reviewed, and it seems wholly unnecessary to review it here. The brief on behalf of appellants before us does not attempt any review; it does not point to any item of testimony which would sustain a holding that the merchandise itself is a finished food preparation and not a material used as an ingredient in such preparations, nor have we found any such item. The argument upon the "pastes" phase of the controversy is almost wholly upon questions of law without any facts being offered sufficient to differentiate this case from the *Columbo Co. et al.* case, *supra*.

We are not convinced that our conclusion there reached was erroneous upon the questions of law, and it must be held here, as

it was held there, that appellants have failed to make a case in support of their contentions as to "pastes."

The other element of importers' claim, which, as has been said, is greatly emphasized here, relates to "sauces of all kinds."

As has been indicated, we have not heretofore had occasion to consider any claim that merchandise such as this is "sauces." We have, however, in a number of instances been called upon to consider the meaning of "sauces" as used in various tariff acts. *United States* v. *Meyer & Lange*, 8 Ct. Cust. Appls. 27, T. D. 37163; *United States* v. *Neuman & Schwiers Co., Inc.*, 18 C. C. P. A. (Customs) 1, T. D. 43971; *United States* v. *Julius Wile Sons & Co.*, 22 C. C. P. A. (Customs) 267, T. D. 47327.

In *Bogle* v. *Magone*, 152 U. S. 623, the Supreme Court of the United States said:

The word "sauce", as commonly used, designates a condiment, generally but not always in liquid form, eaten as an addition to and together with a dish of food, to give it flavor and make it more palatable; and is not applied to anything which is eaten, alone or with a bit of bread, either for its own sake only, or to stimulate the appetite for other food to be eaten afterwards.

The foregoing was quoted by us in the *Neuman & Schwiers Co.* case, *supra*, after which we said:

If a broader meaning of the word "sauce" is given than is indicated in the above quotation, it would be inclusive of any substance used to season or flavor food in the process of cooking or preparing it, and its application would lead us far afield in the classification of this character of merchandise.

The use which is shown of the involved merchandise by the testimony of practically all the chefs called as witnesses for the importers is "in soups, tomato, cream of tomato, puree of tomato, and in the *preparation of many sauces*" (italics ours), such as "sauce Aurore", "sauce Figaro and Tyrolienne", and "to make goulash or ragout." Several of the witnesses, testifying as experts, declared flatly that the material is not a sauce in the common meaning of the term, and no witness testified that it is a sauce.

Under the decisions respecting the meaning of sauces, in a tariff sense, it cannot, in our opinion, be held that the merchandise here involved is a sauce classifiable under paragraph 775.

Certain of appellants' assignments of error relate to the question of commercial designation.

The testimony of two witnesses was taken with a view to proving that the term, "Tomatoes * * * prepared or preserved in any manner", has a commercial meaning different from its common meaning. The Government moved to strike such testimony. The motion was denied at the time with the right later to renew it. The record does not show any renewal of the motion and there is no reference to it or to the said testimony in the trial court's opinion. Following

the motion to strike, counsel for appellants attempted still further proof as to the commercial meaning of the term and objection being made by the Government, the court ruled:

Judge EVANS. The Court is of the opinion that this commodity is a tomato or tomatoes prepared or preserved. The manner of its preparation in preserving has been described, and it was the intent of Congress when it used the language prepared or preserved in any manner, they meant to encompass within that paragraph all commodities of tomatoes, in any manner, regardless of what they may be. The objection is sustained.

Counsel for appellants excepted and placed in the record an "offer of proof" relative to commercial designation by several other witnesses. The action of the court in not admitting and considering such testimony is assigned as error before us. The Government contends that the term is not susceptible to proof of commercial designation.

It may be here remarked that such testimony as was admitted upon this point was not sufficient, in our opinion, to make a case of commercial designation, even were the term, "Tomatoes * * * prepared or preserved in any manner", held to be susceptible to such proof, and it might be questioned whether appellant's "offer of proof" was in correct form, but upon the whole record we shall treat the issue raised by the assignment of error last above noted as being sufficient to render it proper for such issue to be decided. The Government cited the case of *American Express Co.* v. *United States*, 10 Ct. Cust. Appls. 275, T. D. 38680, wherein there is a comprehensive review of the question of commercial designation, many authorities being therein cited.

The general rule long has been established and followed that, since Congress in tariff legislation speaks in the language of commerce, if it be properly shown that a tariff term has a commercial meaning different from its common meaning, the commercial meaning controls the classification of the merchandise embraced within the term. This is not true, however, in cases where Congress has indicated that the words of the statute must be understood and applied according to their common meaning. *I. Shalom & Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 85, T. D. 47067.

In cases where Congress used the words "of all kinds" in connection with merchandise, the rule of commercial designation was held to be excluded. *Habicht, Braun & Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 457, T. D. 32206; *Koch & Co.* v. *United States*, 6 Ct. Cust. Appls. 534, T. D. 36148.

In the *Koch & Co.* case, *supra*, the court said:

* * * "Nippers and pliers *of all kinds*" expressly includes that kind commonly as well as that kind commercially so known; and, obviously, excludes *ex vi termini* application of the rule of commercial designation which would relate the statute to but one of possibly several kinds of nippers and pliers. * * * (Italics quoted.)

It is our view that the phrase "in any manner" has the same effect in the case of the merchandise here involved as did the phrase "of all kinds" in the cases cited.

The implication of such testimony as was admitted seems to be to the effect that only canned tomatoes, probably whole except for the removal of the stems and skins, represent what the witness understood to be "Tomatoes * * * prepared or preserved" in the commercial sense of the term. If the phrase "in any manner" were not present in the statute a different conclusion might be proper, but since the phrase is there it must be regarded. It is perfectly clear that the merchandise is tomatoes prepared and preserved in a specifically described manner. It contains no ingredient other than tomatoes, except that in some instances a negligible amount of flavoring, "such as a basil leaf" is added.

It seems quite clear to us that Congress by using the phrase "in any manner" intended that all "Tomatoes * * * prepared or preserved" should be classifiable under paragraph 772, whether commonly or commercially so known, and that it is, therefore, immaterial whether the term has a commercial meaning which differs from its common meaning. So, the trial court did not err in excluding the testimony offered, nor in disregarding that admitted upon the question of commercial designation.

Nothing is found in any other of appellants' assignments of error which requires specific discussion.

The judgment of the United States Customs Court is *affirmed*.