VITA FOOD PRODUCTS, INC. *v.* UNITED STATES (NO. 3988)[1]

United States Court of Customs and Patent Appeals, November 30, 1936

*Walden & Webster* (*Edward F. Jordan* and *J. L. Klingaman* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument October 8, 1936, by Mr. Jordan and Mr. Jackson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported certain sausage under the Tariff Act of 1930, at the port of New York. There were several shipments, and, after classification by the collector, fourteen protests were filed. By stipulation, protest No. 634676–G/38716 and its accompanying appraiser's and collector's reports were agreed to be typical, and are reproduced in the record.

The goods were classified under paragraph 706 of the Tariff Act of 1930 as "prepared meats, not specially provided for" and are claimed in the protest to be dutiable under paragraph 703 of said act as "other pork, prepared or preserved."

The competing paragraphs are as follows:

PAR. 706. Meats, fresh, chilled, frozen, prepared, or preserved, not specially provided for, 6 cents per pound, but not less than 20 per centum ad valorem.

PAR. 703. Swine, 2 cents per pound; pork, fresh, chilled, or frozen, 2½ cents per pound; bacon, hams, and shoulders, and other pork, prepared or preserved, 3¼ cents per pound; lard. 3 cents per pound; lard compounds and lard substitutes, 5 cents per pound.

[1] T. D. 48685.

On the trial before the United States Customs Court, several witnesses were called and examined on behalf of the importer and of the Government. In addition, a deposition of one Reinhard Witte, taken on behalf of the importer, was introduced in evidence. The method of manufacture of the imported material was shown by the testimony of the witnesses Gastmeyer and Eschenheimer. The latter witness thus described the process of manufacture:

There are various ways of manufacturing liverwurst, but all with slight exceptions, they are identically the same. One party may take the liver and put that through the grinder first; another party may take the liver directly, which saves one operation; another party may take a liver in, scald the liver before grinding; and the other one may—The most common practice, the liver is scalded about 60 per cent scalded, then ground through a grinder, and from there transferred to a silent cutter, and in the silent cutter, pork is added to the liver, also the spices, and veal or such substance as may be added, or beef, any substance. You may add any substance there. From there you transfer it to the stuffing table, stuff it in casings, and from there you take it to the cooking tank, and cook the liverwurst anywhere from three-quarters of an hour to two hours, according to the size of the casing. After that the product is transferred to the smoke house, and then smoked, becomes the finished product.

This witness also testified that it was not necessary to use pork liver in the manufacture of liverwurst, but that lamb or veal or beef liver might be used. The deposition of the deponent Witte furnished a table showing the constituent elements of the items which are involved here, together with the amount and value of the same. In this deposition, the various kinds of sausages imported are referred to as Nos. 18, 19, 20, 22, and 26, and the constituent elements of each mixture are given. On the hearing in this court, the appellant concedes that the deposition is not in sufficient detail as to items Nos. 19 and 20, and the appellant has, therefore, moved to dismiss the appeal as to the protests covering these items. The details, therefore, of such items will be omitted here. Mixtures 18, 22, and 26 are given, as follows:

| | | Percentage of pork (not including liver): | |
| | | Weight | Value |
|---|---|---|---|
| | No. 18.—*Coarse delicatess-leberwurst*<br>Parts: | | |
| May   4, 1932 | Fat and lean pork, 48 lbs. @ 55 Pfg_____ | 61. 54 | 51. 36 |
| | Pork liver, 10 lbs. @ 90 Pfg_____ | | |
| | Veal, 20 lbs. @ 80 Pfg_____ | | |
| | Spice, RM. 1___ | | |
| May 18, 1932 | Fat and lean pork, 24 lbs. @ 55 Pfg_____ | 61. 54 | 51. 57 |
| | Pork liver, 5 lbs. @ 88 Pfg_____ | | |
| | Veal, 10 lbs. @ 80 Pfg_____ | | |
| | Spice, 50 Pfg___ | | |
| Aug. 30, 1932 | Fat and lean pork, 12 lbs. @ 72 Pfg_____ | 61. 54 | 59. 02 |
| | Pork liver, 2½ lbs. @ 80 Pfg_____ | | |
| | Veal, 5 lbs. @ 80 Pfg_____ | | |
| | Spice, 25 Pfg___ | | |

| | | Percentage of pork (not including liver): | |
| --- | --- | --- | --- |
| | | Weight | Value |
| | **No. 22.—*Calf's-leberwurst*** | | |
| | Parts: | | |
| Mch. 9, 1932 | Fat and lean pork, 30 lbs. @ 58 Pfg_____ | | |
| | Calf's-liver, 5 lbs. @ 75 Pfg_____ | | |
| | Spice, R.M. 1_____ | 85.71 | 82.27 |
| Apr. 5, 1932 | Same_____ | | |
| May 9, 1932 | Same_____ | | |
| | Only calf's-liver, 5 lbs. @ 90 Pfg | 85.71 | 79.00 |
| | **No. 26.—*Fine leberwurst*** | | |
| | Parts: | | |
| Mch. 9, 1932 | 30 cases: | | |
| | Fat and lean pork, 695 lbs. @ 58 Pfg_____ | 76.79 | 79.33 |
| | Liver, 210 lbs. @ 50 Pfg_____ | | |
| | Spice, R.M. 3_____ | | |
| Apr. 5, 1932 | 40 cases: | | |
| | Fat and lean pork, 935 lbs. @ 58 Pfg_____ | 76.95 | 78.83 |
| | Liver, 280 lbs. @ 52 Pfg_____ | | |
| | Spice, R.M. 5_____ | | |
| Apr. 19, 1932 | 10 cases: | | |
| | Fat and lean pork, 235 lbs. @ 55 Pfg_____ | 77.05 | 77.37 |
| | Liver, 70 lbs. @ 54 Pfg_____ | | |
| | Spice, R.M. 1_____ | | |
| May 4, 1932 | 25 cases: | | |
| | Fat and lean pork, 600 lbs. @ 60 Pfg_____ | 77.42 | 75.70 |
| | Liver, 175 lbs. @ 66 Pfg_____ | | |
| | Spice, R.M. 2.50_____ | | |
| May 18, 1932 | 30 cases: | | |
| | Fat and lean pork, 710 lbs. @ 55 Pfg_____ | 77.17 | 77.17 |
| | Liver, 210 lbs. @ 55 Pfg_____ | | |
| | Spice, R.M. 3_____ | | |
| June 1, 1932 | 25 cases: | | |
| | Fat and lean pork, 575 lbs. @ 60 Pfg_____ | 76.67 | 78.19 |
| | Liver, 175 lbs. @ 55 Pfg_____ | | |
| | Spice, R.M. 2.50_____ | | |
| July 17, 1932 | 15 cases: | | |
| | Fat and lean pork, 355 lbs. @ 60 Pfg_____ | 77.17 | 78.67 |
| | Liver, 105 lbs. @ 55 Pfg_____ | | |
| | Spice, R.M. 1.50_____ | | |
| Aug. 30, 1932 | 34 cases: | | |
| | Fat and lean pork, 780 lbs. @ 70 Pfg_____ | 76.85 | 77.36 |
| | Liver, 235 lbs. @ 68 Pfg_____ | | |
| | Spice, R.M. 4_____ | | |
| Nov. 30, 1932 | 43 cases: | | |
| | Fat and lean pork, 555 lbs. @ 60 Pfg_____ | 54.15 | 52.15 |
| | Liver, 470 lbs. @ 65 Pfg_____ | | |
| | Spice, R.M. 5_____ | | |

The United States Customs Court overruled the protests, holding that the imported articles were properly classified by the collector as to all items except item No. 19, Anchovy-leberwurst, and item No. 20, Truffle-leberwurst. These items, having been included in the motion to dismiss, need not be further alluded to. The various protests were consolidated for trial in the court below.

The matter comes to us on the importer's appeal.

Counsel for the appellant conceded in the court below, and concede here, that liver is not pork for tariff purposes. They contend, however, that this case is ruled by our decision in *United States* v. *Weber*, 6 Ct. Cust. Appls. 234, T. D. 35469, and that under the ruling in that case the imported products should be classified as "pork, prepared or preserved." Counsel also rely to a considerable extent upon our decision in *B. Westergaard & Co.* v. *United States*, 19 C. C. P. A. (Customs) 299, T. D. 45469, contending that the latter case is authority in support

of the contention that inasmuch as the component material of chief value in the imported materials was pork, these articles should be classified as "pork, prepared."

On the other hand, Government counsel contends that the merchandise at bar is not pork, prepared or preserved, within the common meaning of that term, and that liverwurst, even though in chief value of pork, is excluded from classification in said paragraph 703 under the doctrine of *noscitur a sociis*. It is argued by Government counsel that liver is not classifiable as beef or pork.

In Schedule 7 of the Tariff Act of 1930, headed "Agricultural Products and Provisions," the various ordinary meat products are grouped. An inspection of the various paragraphs shows that the apparent intent was to group in each paragraph specific kinds of animals and their meat. Thus, in paragraph 703, swine and the pork product of the same, including lard and lard compounds, are named. Incorporated is the language here in question, "and other pork, prepared or preserved." This language first appeared in the Tariff Act of 1922. When H. R. 7456, afterwards the Tariff Act of 1922, was introduced in the House, paragraph 703 thereof was, in part, as follows:

PAR. 703. Swine, one-half of 1 cent per pound; fresh pork, three-fourths of 1 cent per pound; bacon, hams, and shoulders, of pork, prepared or preserved, * * *.

The United States Tariff Commission suggested that this language be changed, in stating the following in the Summary of Tariff Information, 1921, prepared for the use of the Ways and Means Committee of the House:

*Suggested changes.*—Pickled or cured pork which is in part dutiable under paragraph 706 constitutes by far the largest item in our pork trade. To maintain the general plan of bringing together the principal hog products, it is suggested that "shoulders, of pork, prepared or preserved," be replaced by "all other pork, prepared or preserved, and not specially provided for." (See Summary of Tariff Information, 1921, p. 642.)

The Congress adopted the suggested changes. From this circumstance, it seems quite obvious that it was the intent of the Congress to group together the principal pork products in one paragraph, and that no other purpose was involved, such as bringing other products into this paragraph aside from hogs or pork products.

It is argued that the *Weber* case, *supra*, is authority in support of the view that the addition of these words "other pork, prepared or preserved," was intended to carry into this paragraph products like those imported here.

That case concerned pâté de foie gras, classified by the collector under paragraph 229 of the tariff act of 1913, as "poultry * * * prepared in any manner." It was claimed to be free of duty under paragraph 545 of that act as "meats of all kinds, prepared or preserved, not specially provided for." The merchandise was composed of

pieces of goose liver, seasoned with salt, pepper, and truffles, and packed in a can which was lined with finely ground meat composed of trimmings from goose livers mixed with fat pork. The pork constituted about one-fourth of the combination, and goose liver the remaining three-fourths.

It was contended by the importer that the word "poultry" referred only to live fowls, or whole, or nearly whole, dead ones, and that the term "poultry * * * prepared in any manner" could not properly apply to the imported material, since it was made of only part of the fowl. It was also contended by the importer that the same material had been held in repeated decisions of the board and courts to be dutiable as prepared or preserved meat, and that this should be given controlling importance.

The Government contended that for the first time, in the act of 1913, the language was added, "or prepared in any manner," and that, therefore, it ought now be classified as "poultry, prepared in any manner."

This court considered the Congressional history and found that in the Notes on Tariff Revision the attention of the Congress had been called to the fact that, if the language of the poultry provision was left as originally drawn, meat of ducks, packed in tins, must be held dutiable as meats, and not as poultry, and that thereafter the Congress amended this provision, adding the words, "prepared in any manner."

This court then concluded that it was the intent of Congress to include all edible parts of a fowl as pâté de foie gras in this new provision for "poultry, prepared in any manner," and, as a result of this conclusion, under the issues raised, ordered the goods to be classified under said provision rather than as "meats, prepared or preserved."

We cannot agree that the *Weber* case, *supra*, is controlling of the issues here involved. The case was decided on issues not in the case at bar.

Appellant next relies upon the opinion of this court in the *Westergaard* case, *supra*. In this case, merchandise consisting of fish balls, fish cakes, meat balls, and meat cakes, imported in cans, was classified under the provision for "soups, pastes," etc., in paragraph 773 of the Tariff Act of 1922. The importer protested, claiming these importations to be dutiable as "Meats * * * prepared * * * not specially provided for," under paragraph 706 of the same act, as to the meat cakes, and, as to the fish cakes, as prepared fish under paragraph 720 of the same act. The fish cakes were composed of fish, milk, potato flour, wheat flour, fat and seasoning. The meat cakes had the same ingredients in the same proportion, except that they contained meat instead of fish.

The testimony showed that the milk was added to mix the material, the flour to make it stick together, the fat to cook it, and the other

materials for seasoning. It was contended that the material could not be held to be under the vegetable paragraph, because there were only negligible quantities of vegetables contained in it. The Government contended that the potato flour was a vegetable and was used in substantial quantities.

This court held that paragraph 773 was a vegetable paragraph and that in view of the small percentage of potato flour present, and its use, we should hold the material to be meats prepared and fish prepared, as the products were essentially meat and fish products.

The case was not decided upon the principle of component material of chief value, but rather upon the contention that there were no substantial quantities of vegetables in the product.

Finally it is argued here that the doctrine of component material of chief value should be held to be applicable to the imported material, and that, inasmuch as the tabulation shows the component material of chief value in the contested items to be pork, both fat and lean, although other material was included in a minor degree, the products should have been classified as "pork, prepared or preserved."

The rule as to the ascertainment of the component material of chief value, in attempting to classify material, was originally invoked in cases where the imported article was composed of several component elements, and the rule has developed largely in connection with the classification of manufactured articles in which the material is the principal point involved. Such, for instance, are the provisions for manufactures of a certain material, or articles composed of certain named materials.

We have not been cited to any case where the doctrine of component material of chief value has been applied to an article *eo nomine* designated in the statute, except where the classification of such article, which might be made of more than one material, depended upon the material of which it was composed. An early case on the development of this doctrine is the much cited one of *Arthur's Executors* v. *Butterfield*, 125 U. S. 70. Here goods were classified under the tariff act of March 2, 1867, c. 197, § 2, as composed wholly or in part of wool, worsted, the hair of the alpaca, goat, or other like animals, The plaintiff contended that the goods were classifiable under the 21st section of the act of July 14, 1870, as "manufactures of hair not otherwise provided for." It was shown that the goods were part cotton and part hair, the major portion being hair. The Supreme Court applied the doctrine of component material of chief value, and held the goods to be manufactures of hair.

In the early application of the doctrine by this court, we applied the rule as is stated in *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, T. D. 33124:

The general rule appears to be well settled that when a tariff statute provides for duty upon an article of specified material, without declaring to what extent it

must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein.

Again, in *Blumenthal* v. *United States*, 5 Ct. Cust. Appls. 327, T. D. 34529, the question involved was upon a statutory provision imposing certain rates on buttons of glass, and similar materials. We said, in part:

> The general rule is that when a statute imposes duty upon an article as "made of," "composed of," or "manufactured of" a specified material without declaring to what extent it must be of that material it is at least confined to merchandise of which the specified material is the component of chief value.

In the same connection see *United States* v. *Buss & Co.*, 8 Ct. Cust. Appls. 5, T. D. 37122. In that case we said:

> The metal part is so predominant as well as being the component material of chief value that they do not come within any exception to the rule so often announced that merchandise made, composed, or manufactured of a specific article with no words of limitation is *generally* classified with reference to the component material of chief value.

An interesting case in this connection is *United States* v. *Furuya,* 6 Ct. Cust. Appls. 207, T. D. 35463. In this case meat and mushrooms were imported mixed in cans. This court held that the article could not be treated as meat, prepared or preserved, as the mushrooms were a distinct article of food, not inserted for the purpose of flavoring the meat. It was assessed for duty as a nonenumerated manufactured article, and was claimed to be free of duty under paragraph 545 of the tariff act of 1913, as "meats of all kinds, prepared or preserved." It was held, however, that neither the mixed material clause nor the rule of chief value applied to articles on the free list.

We are of opinion that the doctrine of component material of chief value cannot properly be applied in the case at bar. Therefore, inasmuch as the imported articles each contain a substantial amount of material which is not pork, and which is not inserted for seasoning, but for distinct meat purposes, the merchandise cannot be classified as "pork, prepared or preserved," and the classification by the collector must be upheld.

There is no legislative history called to our attention, nor is there any judicial authority which indicates that in this case any different meaning should be ascribed to the language of said paragraph 703 than the common and ordinary meaning of the words used.

Webster gives the following definition of the words "pork" and "swine":

> *pork* 1. The flesh of swine, fresh or salted, used for food.
> *swine*—Any hoofed mammal of the hog kind; a hog.

Certainly, products which are in a large proportion composed of veal, calf's liver and liver without designation of its variety, cannot be treated as pork or pork prepared or preserved, unless the rule of

component material of chief value is applied, and as to this we have already expressed our opinion that this rule cannot be invoked here.

In addition to what has been said, attention should be given to the claim of Government counsel that the rule of *noscitur a sociis* should be applied in the construction of the language of said paragraph 703. The legislative history of this paragraph, as hereinbefore recited, shows that the apparent intent of the legislature in enacting said paragraph was to group together all swine and also all pork products not otherwise more specifically provided for. Every *eo nomine* designation therein contained applies to such products, except, alone, "lard substitutes," and this is evidently therein included for convenience. We are of opinion that it would be contrary to the evident purpose of this paragraph to include therein products like those here involved. The rule of *noscitur a sociis* should, therefore, be applied, and the contention of Government counsel in that respect is sustained.

For reasons above stated the appeal is *dismissed* as to items Nos. 19 and 20, and the judgment of the United States Customs Court is *affirmed*.

### DISSENTING OPINION

GARRETT, Judge: The majority decision does not overrule the decision of this court in *United States* v. *Weber*, 6 Ct. Cust. Appls. 234, T. D. 35469, but attempts to distinguish this case from that, holding that case to have been "decided on issues not in the case at bar." I am unable to distinguish the cases in principle and feel that the rule as to uniformity of decision should be observed.

This court there discussed the legislative history of the poultry paragraph of the 1913 tariff act and judicial decisions thereon, to be sure, but what in fact was held was that the insertion of the words "or prepared in any manner" in that paragraph served to render a product composed principally, in quantity at least, of goose livers, which, under three former tariff acts had been uniformly classified under the meat provisions of such acts, classifiable as poultry.

This court there said:

These words were evidently intended to enlarge the poultry provision so as to bring within its purview the prepared meat of fowls as meat only, whether as a whole or in pieces, without requiring that the fowls should be preserved therein according to their identity as individuals.

Elsewhere in its decision this court, after stating the claims of the parties, said:

In coming to consider these respective claims we may say at once that the provision for "poultry, prepared in any manner" is more specific than that for "meats of all kinds, prepared or preserved, not specially provided for in this section." The term "poultry" is a more limited term than "meats of all kinds", and this fact is accentuated by the presence of the n. s. p. f. clause in the meat provision and not in the poultry provision.

So, although here it may be broadly true, as suggested by the trial court, that "there is nothing illogical in holding that the commodity is prepared meat, because both pork and liver can be included under the general designation of meat", we may not overlook the rule of relative specificity.

As is pointed out in the majority opinion here, the phrase "other pork, prepared or preserved", first appeared in the Tariff Act of 1922. It was continued in the same relation in the paragraph of the Tariff Act of 1930 under which appellant claims. It is my view that the phrase as used in the paragraph here at issue has the same meaning as did the phrase "prepared in any manner" appearing in the poultry paragraph of the 1913 act.

Having the foregoing in mind, let us look to the analogies between the *Weber* case, *supra*, and the case at bar:

There the products were ground, or partly ground and partly chopped, mixtures having a predominant ingredient—goose·liver. Here the product is a ground, or partly ground and partly chopped, mixture having a predominant ingredient—pork. There the paragraph under which the merchandise was held classifiable contained the phrase "prepared in any manner." The phrase "prepared or preserved" appears in the paragraph under which importer's claim here is made. There the phrase "not specially provided for" appeared in the meats paragraph and did not appear in the poultry paragraph, this fact being pointed to by this court as accentuating the greater specificity of the poultry paragraph. Here the "not specially provided for" phrase appears in the "meats" paragraph, and not in the swine and pork paragraph. When the respective natures of the two products are considered, we find that, except as to the inherent nature of the meats, they are much alike. In both instances the products were cooked, and in neither case were the original form and separate identity of the articles retained, a fact which in the *Weber* case, *supra*, this court commented upon as follows:

It has been held in repeated cases that a tariff provision for articles of food "prepared or preserved" does not necessarily imply that the articles thus described shall retain their original form and separate identity when so prepared or preserved.

As authorities for the foregoing, this court cited the cases of *Bogle* v. *Magone*, 152 U. S. 623; *Vitelli & Son* v. *United States*, 4 Ct. Cust. Appls. 75, T. D. 33313, and *Stein, Hirsch & Co.* v. *United States*, 6 Ct. Cust. Appls. 154, T. D. 35397.

Reasoning by analogy, I am unable to see why, if the mixture involved in the *Weber* case, *supra*, was, for tariff purposes, more specifically provided for as "poultry prepared in any manner" than as "meats of all kinds, prepared or preserved, not specially provided for," the mixture here is not more specifically provided for as "other pork, prepared or preserved" than as "Meats * * * prepared, or preserved, not specially provided for * * *."

I note that the cases of *United States* v. *Swift & Co.*, 13 Ct. Cust. Appls. 542, T. D. 41428, and *Neuman & Schwiers Co. (Inc.)* v. *United States*, 19 C. C. P. A. (Customs) 375, T. D. 45511, both relied upon by the court below and by the Government here, are not referred to in the majority opinion. I take it that those cases are regarded by the majority, as they are by myself, as being distinguishable from this case.

In connection with legislative history, embracing judicial interpretation, it seems to be apropos to direct attention to the following:

In *Wm. A. Brown & Co. et al.* v. *United States*, T. D. 40726, 47 Treas. Dec. 257, decided March 10, 1925, the United States Board of General Appraisers (now the United States Customs Court) held merchandise described by the local appraiser as "Chinese sausages composed of pork, salt, and spices, in sausage casings, put up in hermetically sealed tins," classifiable as "other pork, prepared or preserved," under paragraph 703 of the Tariff Act of 1922 rather than as "meats prepared or preserved" under paragraph 706 of that act, stating that it was the court's assumption that "*pork was the principal ingredient* and characterized the importation * * * ." [Italics mine.] In its opinion attention was directed to the fact that the phrase "pork, prepared or preserved," appearing in the 1922 act, was new legislation.

In Abstract 1396, 50 Treas. Dec. 790, decided December 2, 1926, salami described as being "composed in chief value of pork seasoned with salt and spices" and containing "no flour or vegetables," was held classifiable under paragraph 703, upon the authority of T. D. 40726, *supra.*

Other abstract decisions, seemingly of like purport, are found in Abstracts 1363 and 1364, 50 Treas. Dec. 785, and it appears that T. D. 40726, *supra,* and Abstract 1396, *supra,* were brought to the direct attention of the Congress which enacted the Tariff Act of 1930 in "Summary of Tariff Information 1929," Vol. 1, page 1042, and that Congress, with knowledge that the phrase "other pork, prepared or preserved," had been construed to include sausage products in chief value of pork, made no changes, necessary to be here considered, in reenacting, in the Tariff Act of 1930, paragraphs 703 and 705 of the Tariff Act of 1922.

Upon the record and under the authorities cited, I feel that the judgment of the trial court should be reversed and the cause remanded.