BOGLE *v.* MAGONE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 291. Argued March 15, 1894. — Decided April 9, 1894.

Anchovy paste and bloater paste, made of anchovies or bloaters ground up fine and spiced, used as food or as an appetizer, in sandwiches or with a cracker, and not used as a condiment, nor known in trade and commerce as sauces, may be found by a jury to come within the description of "fish prepared or preserved," and not within the description of "sauces of all kinds," in the tariff act of 1883.

THIS was an action, brought May 23, 1888, against the collector of the port of New York, after due protest and appeal, to recover back an excess of duties exacted and paid upon goods imported and invoiced by the plaintiffs in 1886 and 1887 as "fish pastes," and which they contended should have been assessed as "fish, prepared or preserved," twenty-five per cent ad valorem, but which the defendant assessed as "sauces," thirty-five per cent ad valorem, under the tariff act of March 3, 1883, c. 121, Schedule G of which imposes the following rates of duty:

"Anchovies and sardines, packed in oil or otherwise," in small tin boxes, certain rates varying from ten to two and a half cents per box, according to its size; "when imported in any other form, forty per centum ad valorem.

"Fish preserved in oil, except anchovies and sardines, thirty per centum ad valorem.

" Salmon, and all other fish, prepared or preserved, and prepared meats of all kinds, not specially enumerated or provided for in this act, twenty-five per centum ad valorem.

" Pickles and sauces, of all kinds, not otherwise specially enumerated or provided for in this act, thirty-five per centum ad valorem." 22 Stat. 503, 504.

At the trial, one of the plaintiffs, who were importers of fancy groceries at New York, testified that the goods in question (samples of which were produced in court) were imported as " anchovy paste " and " bloater paste." The definition in Webster's Unabridged Dictionary of " sauce," as " a mixture or composition to be eaten with food for improving its relish ; a relishing condiment ; appetizing addition to the principal material of a dish;" being read to him, he testified that the word had a significance in the wholesale commerce of this country in 1883 and theretofore, differing from the definition read ; that the commercial meaning of a sauce was a liquid, and that was the only particular in which it varied from the definition read ; and that anchovy paste or bloater paste, such as represented by the samples, was not recognized in trade and commerce in 1883 and prior thereto as a sauce. On cross-examination, he testified that he understood the sense of the dictionary definition of sauce to be " anything used as a relish, either liquid or solid, as an addition to the food ; " that these articles were used as food, principally in sandwiches, or like potted meats or devilled meats; that " anchovy paste " was manufactured out of anchovies, and " bloater paste " out of bloaters ; that these were the only names by which they were known in trade and commerce in and before 1883, as well as since; that they had a fish taste; and that no part of each fish could be distinguished, but all was ground up fine, and spiced.

Three other importers and sellers of fancy groceries at New York, called as witnesses for the plaintiffs, testified that the term " sauces," as used in trade in and before 1883, had reference to liquids only, and did not include solids; and that the goods in question were not commonly known as sauces. One of them testified that each of these pastes was used as a direct

article of food, and not as an addition to anything to give zest to it, and was used only in a distinct form, as in a sandwich or the like; and on cross-examination testified that " he had often eaten the same articles as those in suit with a cracker or cake, eating the paste alone first and the cracker afterwards — probably within thirty seconds after — as soon as he was able to swallow." The two other witnesses testified that it had a spicy flavor, and would induce hunger and thirst, and was used as an appetizer before a meal. The witnesses also testified that they dealt in the article known as " anchovy sauce " or " essence of anchovies," which was a liquid, and altogether different from these pastes, and never eaten alone or as an addition to bread, but as a condiment.

At the close of the plaintiffs' evidence, the court, upon motion of the defendant, directed a verdict for him, upon the grounds that " the plaintiffs had not proved facts sufficient to entitle them to recover; " that " the term ' sauces of all kinds,' in the tariff act, was a descriptive term of ordinary use, to be taken in its ordinary meaning, and not in any restrictive or trade meaning," and that " the ordinary use of the term ' sauces ' included the articles in suit." 40 Fed. Rep. 226.

A verdict was returned accordingly, and judgment entered thereon; and the plaintiffs tendered a bill of exceptions, and sued out this writ of error.

*Mr. Everit Brown* for plaintiffs in error.

*Mr. Assistant Attorney General Whitney* for defendant in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The word " sauce," as commonly used, designates a condiment, generally but not always of liquid form, eaten as an addition to and together with a dish of food, to give it flavor and make it more palatable; and is not applied to anything which is eaten, alone or with a bit of bread, either for its own

sake only, or to stimulate the appetite for other food to be eaten afterwards. For instance, cheese eaten with bread, or ham or chicken eaten in a sandwich, or anchovies or herrings, caviare or shreds of salt fish, eaten, whether with or without bread, as an appetizer before a meal, would hardly be called a sauce.

In the dictionary of Webster, referred to at the trial, the primary definition of "sauce" is accordingly given as "A mixture or composition to be eaten with food for improving its relish; a relishing condiment; appetizing addition to the principal material of a dish." In a later edition, there is given, by way of additional definition, "Stewed or preserved fruit, eaten with other food as a relish; as apple sauce, cranberry sauce, etc."

In the tariff act of 1883, the clause relating to "sauces of all kinds," (unless affected by other clauses in the act, or by commercial usage,) may well be held to include all substances, whether solid or liquid, fairly coming within either of these two definitions. But the second definition has no application to the present case.

The three clauses, mentioned in argument as possibly applicable to the goods in question, are arranged in the act in a natural order, beginning with the most specific and restrictive, and ending with the most general; first, "anchovies," "imported in any other form" than "packed in oil or otherwise" in small tin boxes, forty per cent ad valorem; then, "all other fish, prepared or preserved," "not specially enumerated or provided for in this act," twenty-five per cent ad valorem; and lastly, "sauces, of all kinds, not otherwise specially enumerated or provided for in this act," thirty-five per cent ad valorem. 22 Stat. 503, 504. Any article which comes within two or more of these descriptions must therefore be assigned to the earlier one. *Homer* v. *The Collector*, 1 Wall. 486; *Reiche* v. *Smythe,* 13 Wall. 162; *Seeberger* v. *Cahn*, 137 U. S. 95; *American Net & Twine Co.* v. *Worthington*, 141 U. S. 468.

At the trial, the plaintiffs introduced evidence that the goods in question were manufactured out of anchovies or

bloaters, ground up and spiced; were used as food, in a distinct form, or as an appetizer, principally in a sandwich, or sometimes with a cracker, and not as a condiment; and were specifically known as "anchovy paste" and "bloater paste;" and that, in trade and commerce in 1883 and previously, the word "sauces" was applied to liquids only, and not to these pastes.

The Circuit Court, in directing a verdict for the defendant, ruled, in substance, that as matter of law, and without regard to commercial usage, these articles came within the words "sauces of all kinds" in the tariff act. We are unable to concur in that view; or to say, either of our judicial knowledge, or in view of the evidence introduced, that these articles are necessarily "sauces" of any kind; still less, that this is so clear as to exclude the usual test of commercial designation. *Cadwalader* v. *Zeh*, 151 U. S. 171, 176.

On the contrary, we are of opinion that the evidence of the nature and the use of these articles, and of their commercial designation, would have warranted a jury in finding that they were not "sauces," and were "fish, preserved or prepared." If that fact were proved, it would follow that, as such, the bloater paste, at least, was subject to the duty of only twenty-five per cent ad valorem; but a question might arise, which does not appear to have been considered at the trial, whether the anchovy paste was not subject to a duty of forty per cent ad valorem, under the earlier and more specific clause of the act, as "anchovies" "imported in any other form" than packed, in oil or otherwise, in small tin boxes.

*Judgment reversed, and case remanded to the Circuit Court with directions to set aside the verdict and to order a new trial.*

Mr. Justice Jackson did not hear the argument, and took no part in the decision of this case.