NEWMAN-ANDREW CO. *v.* UNITED STATES (No. 149). UNITED STATES *v.* NEWMAN ANDREW CO. (No. 152).[1]

1. "PLATES" DEFINED.

The testimony in the record is at one with the authority of the lexicons in emphasizing the fact that "plate" both in common parlance and in commerce is used to designate an article distinct from "drawplate," being in fact the thing out of which "drawplates" are made. The term "plate" is not generic, including "drawplate" as a species.

2. DRAWPLATES AND WORTLES, HOW DUTIABLE.

Drawplates and wortles forged from the ingot through various stages and reaching the condition as here imported, namely, the final shape in which they are delivered to the consumer, the adjusting processes to which they are necessarily subjected being merely incidental to the common use of drawplates and wortles, are articles, it is true, of steel, wholly or partly manufactured, but they are more specifically "forgings of steel" and were dutiable, accordingly, under paragraph 127 rather than under paragraph 135, tariff act of 1897.

## United States Court of Customs Appeals, May 1, 1911.

CROSS-APPEALS transferred from United States Circuit Court for Southern District of New York, G. A. 6925 (T. D. 29930).

[*Modified and affirmed.*]

*Brown & Gerry* for importer, appellant, and appellee.

*D. Frank Lloyd*, Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

These are cross-appeals from a decision of the Board of General Appraisers.

The merchandise consists of what was termed in the invoice "wortles" and "drawplates."

The drawplates are from 13 to 18 inches long by 4½ to 5½ inches wide and from 1½ to 1¾ inches thick. The wortles are approximately 8 inches long by 1¼ inches wide and 1½ inches thick. Both are forged from the ingot through various stages to their condition as imported. The so-called drawplate contains 18 holes, one end being hammered down to form a handle, and the wortles 6 holes, all of diminishing diameters, being from ¾ to 1½ inches on the face and gradually diminishing to a minute perforation on the back.

The testimony is uniform that each is made by forging processes exclusively and each used as part of a wire-drawing machine.

The collector at the port of New York assessed them for duty as "articles and wares of steel partly or wholly manufactured" under paragraph 193 of the tariff act of 1897. The importers make claim that they are either "plates" or "steel in all forms and shapes," under paragraph 135, or "forgings of steel" under paragraph 127 of the same act.

---

The pertinent portions of these paragraphs are as follows:

193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, * * * and whether partly or wholly manufactured, forty-five per centum ad valorem.

127. Iron or steel anchors or parts thereof, one and one-half cents per pound; forgings of iron or steel, or of combined iron and steel, of whatever shape or whatever degree or stage of manufacture, not specially provided for in this act, thirty-five per centum ad valorem; antifriction ball forgings of iron or steel, or of combined iron and steel, forty-five per centum ad valorem.

135. Steel ingots, cogged ingots, blooms, and slabs, by whatever process made; die blocks or blanks; billets and bars and tapered or beveled bars; mill shafting; pressed, sheared, or stamped shapes; saw plates, wholly or partially manufactured; hammer molds or swaged steel; gun barrel molds not in bars; alloys used as substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam, or iron-molded steel castings; sheets and *plates and steel in all forms and shapes not specially provided for in this act.* * * * (Here follow specific rates of duty.)

The Board of General Appraisers held the drawplates to be dutiable as "plates," basing their decision upon the testimony in the record introduced to prove that they are commercially known as plates. The wortles were held by the board to be dutiable as forgings.

The Government appeals as to the drawplates, and the importer as to the wortles.

The Government here maintains that both are dutiable as "articles of steel partly or wholly manufactured" at 45 per cent ad valorem under paragraph 193.

The importer contends, first, that they are dutiable as "plates" by reason of commercial designation, or as "steel in all forms or shapes not specially provided for" under paragraph 135, or as "forgings" under paragraph 127.

The issues here presented have been the subject of previous decisions by the Board of General Appraisers and the United States Circuit Court of Appeals, Second Circuit. The previous case covered precisely similar merchandise imported by the same importers. In the first case, as in this, the collector assessed the merchandise for duty as "articles of steel" under paragraph 193. On the appeal to the courts from the board the importer waived the contention that the merchandise was "steel in all forms and shapes" and asserted the single claim that they were plates. The Circuit Court of Appeals for the Second Circuit stated that the waiver by the importer deprived his claim of all merit, and held that neither of the articles was within the general scope of the word plate as used in paragraph 135.

The issue again being presented to the Board of General Appraisers, testimony was introduced by the importer with a view to showing that the drawplates were within the commercial signification of plates as used in paragraph 135 and so understood in trade and commerce. There was no testimony even tending to show the trade understanding of wortles. The board held, as above stated, and hence the cross appeals.

Whether or not the court of appeals in the case previously presented to that court passed upon the question of the applicability of trade testimony as affecting the term plates as used in paragraph 135 is a mooted question. The expressions of the court would seem to indicate that it considered the term to have been used in its ordinary signification. Regardless of that issue, however, this court is of the opinion that the testimony introduced by the importer does not show that the imported merchandise, or any part thereof, is comprehended by the term plates as used in paragraph 135.

The testimony shows that the wholesale trade generally, wherein the merchandise is bought and sold, refers to the particular merchandise as "drawplates," "wire plates," "drawing plates," and "wire drawing plates." It appears that in specific instances, when addressing the particular trade, "plates" has been used, but that the general and uniform custom of the trade is to indulge in one of the names stated. Counsel for the importer lays much stress upon the signification of the word drawplate, and quotes the definitions of the various lexicographic authorities in his support. They are as follows:

Webster's International Dictionary:

*Drawplate.*—A hardened steel *plate* having a hole, or a gradation of conical holes, through which wires are drawn to be reduced or elongated.

Century Dictionary:

*Drawplate.*—A drilled *plate* of steel or a drilled ruby through which a wire, or a metal ribbon or tube, is drawn to reduce its caliber and equalize it, or to give it a particular shape.

Standard Dictionary:

*Drawplate.*—A hard *plate* with holes of successively diminishing diameters for drawing out metal rods or wire.

A lexicographic definition of plate given by Lockwood's Dictionary of Mechanical Engineering Terms, which is essentially that given by others, is as follows:

*Plate.*—A broad, thin sheet of metal.

That definition is in accordance with the common understanding of the term. The definitions of drawplate, quoted by counsel, when read in connection with the definition of plate as quoted, emphasizes perfectly the fact, which is corroborated by every witness who testified, to wit, that drawplate is something more than plate.

Webster defines drawplate as "A hardened steel plate *having a hole, or a gradation of conical holes,* * * *." That is to say that it is a plate to which something has been done or added to bring it within the category known as drawplate.

The Century Dictionary states it to be "A *drilled* plate of steel * * *." That is to say that it was originally a plate of steel which has been drilled in such a manner as to at least partially fit it for its subsequent use.

The Standard Dictionary definition implies the same thing. By that authority it is "A hard plate *with holes of successively diminishing diameters* for drawing out metal * * * wire." Here again it is applied with something added, devoting it to a specific purpose.

In every case the material from which drawplate is made is a plate, as defined by the lexicographers, with added processes of manufacture fitting it for a particular use, which when completed give the article a different and distinct name in trade and commerce, to wit, "drawplate."

The testimony in the record perfectly coincides with the lexicographic authorities in emphasizing the fact that "plate," both in common parlance and as understood in trade and commerce, is a separate and distinct article from "drawplate," being the thing out of which "drawplates" are made, rather than a generic term, embracing as a species, "drawplate."

As was stated by the Circuit Court of Appeals in the previous case—

Undoubtedly steel plates were formerly used to draw wires through, and, as is not uncommon, the earlier name clings inappropriately to the later development.

We think that the proper office of paragraph 135 was aptly defined by Judge Hough in United States *v.* Buehne Steel Wool Co. (154 Fed. Rep., 93), wherein the court states:

It seems to me going too far to describe the articles of steel specifically enumerated in paragraph 135 as "crude" or even "simple," for many of them are of complex design and all presuppose great inventive and mechanical skill, and are finished or completed in the sense that they are ready for the markets of the world. But it is true that as a class they are, though the finished products of the mill, *but the raw material for some other metal industry*—for the machine shop or the builder. No article there enumerated is ordinarily used by the final consumer, or put to its ultimate use, by the name or in the shape described by the name used in paragraph 135.

It will be noted in passing that this merchandise is in the final shape in which it is delivered to the consumer, and is not the raw material for further manufacture in any metal industry.

What constitutes forgings has likewise been the subject of much discussion in the courts. The highest and perhaps the most satisfactory deliverance on the subject was by the Supreme Court of the United States in Saltonstall *v.* Wiebusch (156 U. S., 601). The subject of that decision was scythes and grass hooks made out of flat pieces of metal which were shaped by forging, but which required in addition thereto, in order to make them ready for their intended use, the application of other processes than forging. The question was whether they were dutiable as forgings or as articles of steel partly manufactured. While the statute under consideration by the court differed in language from the present, the terms defined are the same. The court said:

From the separate enumeration of "forgings of iron and steel" and "forged iron, of whatever shape or in whatever stage of manufacture," it would seem that Congress intended to distinguish between the two and to apply the term "forgings," though perhaps not exclusively, *to such articles as are completed by the action of the hammer.*

Hence we are not prepared to accept the theory of the Government in this case that the articles in this paragraph are confined to such as are incomplete or in process of manufacture, as there may be many articles which would naturally fall within the designation of "forgings" which are finished and ready for use—such, for example, as ornamental ironwork, wrought iron railings, and grilles, none of which are subjected to any further process of manufacture. This view is strengthened to a certain extent by the separate enumeration in the same schedule of "anvils, anchors or parts thereof, mill irons and mill cranks, of wrought irons and wrought iron for ships, and forgings of iron and steel, for vessels, steam engines, and locomotives, or parts thereof * * *." Apparently all of these fall within the same category of forgings and apply to completed articles.

But we do not understand the term "forgings" to be applicable to articles which receive treatment of a different kind than hammering before they are complete, such, for example, as grinding, tempering, or polishing, though the witnesses agreed that welding and punching are properly forging processes.

These articles, precisely as imported, are completed and ready for delivery into the hands of the consumer. While it is true that for the consumer's purpose they must be fitted for a particular application by adjusting the smaller orifices of the conical holes to suit the particular size of wire to be made by drawing the wire material through them, nevertheless we do not regard these adjusting processes as other than of those incidental to wortles and drawplates in their everyday use. These operations are such as at frequent intervals during use are applied to all wortles and drawplates for the purpose of adjustment, and not for the purpose of completing the article. That they may be adjusted at the outset by the consumer to fit his purposes, and from time to time as necessity requires, it is necessary that they be placed in the hands of the consumer as imported. These processes are not dissimilar to those applied to various kinds of machinery and implements while in use, adjusting them to the particular purpose of the day, or requirement of the desired product. They are incidents of use rather than of manufacture. Moreover, the record discloses that these very processes, if they may rise to that relative dignity, are essentially forging processes.

For these reasons we find it unnecessary in this case to consider or decide whether or not an incomplete article upon which there have been applied forging processes exclusively should, in order to be classified as a forging, be one upon which the remaining processes necessary to make it a complete article must be forging processes. As imported, we regard this article to all intents and purposes completed. They are forgings, and have had no other than the forging processes applied in their making.

In our view, they are properly dutiable under paragraph 127 as forgings, and not under paragraph 193 as articles of steel, nor under paragraph 135 as plates of steel in all forms and shapes. As between paragraphs 193 and 127, while they might properly fall within either paragraph, the provision "not specially provided for in this act" in

one paragraph neutralizes the equivalent expression in the other paragraph. The terms, therefore, are to be compared without limitation. Articles of steel wholly or partly manufactured include forgings of steel of whatever degree or stage of manufacture and many other articles, whilst forgings of steel constitute but one of the many varieties of articles of steel. The term "forgings of steel," therefore, is the more specific. So, clearly, the phrase "forgings of steel," of whatever degree of manufacture, is more specific than "steel in all forms and shapes." In any event the provisions of paragraphs 135 and 127, extending equally to an imported article, the higher rate of 127 must be applied.

We are of the opinion that the merchandise is properly dutiable as forgings of steel of whatever degree or stage of manufacture under the provisions of paragraph 127. The decision of the Board of General Appraisers is accordingly modified, and as so modified *affirmed.*