NEUMAN & SCHWIERS CO., INC. *v*. UNITED STATES (No. 3994)[1]

United States Court of Customs and Patent Appeals, October 26, 1936

*Barnes, Richardson & Halstead* (*Albert MacC. Barnes* and *Samuel M. Richardson* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

[Oral argument October 5, 1936, by Mr. Barnes and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported certain merchandise invoiced as "Sauce Bercy" and "Sauce Bordelaise," under the Tariff Act of 1930, in two shipments, at the port of New York. This was classified by the

---

[1] T D. 48606.

collector in each instance as an alcoholic compound not specially provided for, or as a chemical compound or mixture alcoholic, not specially provided for, under paragraph 24 of said tariff act, at 20 cents per pound and 25 per centum ad valorem. The importer protested, claiming the goods to be properly dutiable as "sauces of all kinds, not specially provided for," under paragraph 775, or as nonenumerated manufactured articles under paragraph 1558, or under one of the provisions of paragraph 721 of said tariff act. On the trial, the appellant relied upon the claim under said paragraph 775, as sauces. The United States Customs Court overruled the protests, the causes having been consolidated for hearing, and the importer has appealed.

The relevant provisions of the statute are as follows:

PAR. 24. Chemical elements, and chemical and medicinal compounds, preparations, mixtures, and salts, distilled or essential oils, expressed or extracted oils, animal oils and greases, ethers and esters, flavoring and other extracts, and natural or synthetic fruit flavors, fruit esters, oils and essences, all the foregoing and their combinations when containing alcohol, and all articles consisting of vegetable or mineral objects immersed or placed in, or saturated with, alcohol, except perfumery and spirit varnishes, and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; containing more than 20 per centum and not more than 50 per centum of alcohol, 40 cents per pound and 25 per centum ad valorem; containing more than 50 per centum of alcohol, 80 cents per pound and 25 per centum ad valorem.

PAR. 775. * * * sauces of all kinds, not specially provided for; * * * 35 per centum ad valorem; * * *.

The merchandise involved in the appeal is substantially the same material which was involved in *United States* v. *Julius Wile Sons & Co.*, 22 C. C. P. A. (Customs) 267, T. D. 47327. The only difference is in the proportions of alcohol and salt. These differences, however, are not sufficient to call for any different conclusion, and it is agreed by counsel that the imported goods in both cases shall be considered as if they were identical. In the *Wile* case it was shown that the goods were composed of wine, salt, and water, and were used not as table sauces, but as constituents of other sauces, and as flavors for certain foods, and, as such, were used in the kitchen in cooking. In that case it was admitted, as it is here, that the imported goods did not come within the common meaning of the word "sauces," as it is used in the statute, and as it has been defined by the courts. See *Bogle* v. *Magone*, 152 U. S. 623; *United States* v. *Neuman & Schwiers Co., Inc.*, 18 C. C. P. A. (Customs) 1, T. D. 43971. It was, however, attempted to be established by commercial proof in the *Wile* case that the goods were commercially known as sauces prior to and at the time of the passage of the Tariff Act of 1930. Ten witnesses were called and examined, in an attempt to establish such commercial designation.

The United States Customs Court was of opinion that such commercial designation had been established by the testimony of these witnesses.

On appeal we examined the record and the testimony of these witnesses, and came to the conclusion that commercial designation of the imported goods had not been established as the law requires. We said, in part:

In our view of this testimony, the importer failed to make proof of commercial designation of the word "sauces" different from its ordinary meaning. This was the burden imposed upon it by the law. But one witness, the witness Reitz, testified that the imported material was uniformly, definitely, and generally known commercially as "sauces" at the time of the enactment of the act. We are of opinion that the cross-examination of this witness destroyed the weight of the witness' categorical statement in this respect, and demonstrated that the merchandise was, in fact, not commercially designated as "sauces," but as "Sauce Bercy" and "Sauce Bordelaise." The overwhelming weight of the testimony of importer's witnesses was to the same effect. Hence, it appears quite evident that a commercial designation, as claimed by the appellee, was not established.

\* \* \* The Congress, in its enumeration of articles to be included within said paragraph 775, did not say "wine sauces" or "Sauce Bordelaise" or "Sauce Bercy", but said "sauces." The importer could not escape the classification unless he could prove, by a preponderance of the evidence, that the goods were commercially, definitely, uniformly, and generally known, at the time of the enactment of the act, under the exact term used in the statute, namely, "sauces." This the importer failed to do.

It will be observed from a reading of the opinion of this court in that case that this court did not find that the importer had produced no testimony of commercial designation, but did find that the overwhelming weight of the testimony offered demonstrated that the merchandise was not commercially designated as sauces, definitely, uniformly, and generally.

In the case at bar, the importer sought to again present the issue of commercial designation upon a new record, and in doing so attempted to bring itself within the rule laid down in the *Wile* case, *supra*. To support its case, ten witnesses were called by the appellant, while four witnesses in rebuttal were called and examined by the Government. The witnesses called on the part of the appellant were men well acquainted with the trade, and who had, for a long time and prior to the passage of the Tariff Act of 1930, been engaged in buying and selling sauces and similar materials throughout the United States. While some of the witnesses dealt in a restricted territory, such as New England, we think, from a fair consideration of the testimony of all the witnesses, that the testimony covered practically all of the United States and the trade therein.

The witnesses for the importer testified, without exception, that at the time of, and prior to, the enactment of the Tariff Act of 1930, the

word "sauce" had a definite, general, and uniform meaning, namely: "A liquid or semi-liquid mixture of two or more ingredients to be used as a flavoring of food, either in the kitchen or on the table, or used to create other sauces"; that the articles imported here, namely, Sauce Bercy and Sauce Bordelaise, were included within the trade designation of the word "sauces," and were designated by the wholesale trade definitely, uniformly, and generally as "sauces" prior to and at the time of the passage of the Tariff Act of 1930.

The four witnesses called by the Government did not controvert this evidence.

Upon this record, the United States Customs Court found and held that proof of commercial designation had not been established; that the facts shown by the record were no different than those shown in the record in the *Wile* case, *supra;* and that, therefore, the protests should be overruled.

Counsel for the Government urge here, apparently for the first time, that the appellant is not entitled to a judgment even though it has established a commercial designation of the imported articles as sauces. Inasmuch as this proposition lies at the threshold of the case, it will be disposed of now. The argument of Government counsel proceeds along this line: That the common meaning of the term "sauce" was established by *Bogle* v. *Magone, supra,* decided April 9, 1894, as follows:

The word "sauce," as commonly used, designates a condiment, generally but not always of liquid form, eaten as an addition to and together with a dish of food, to give it flavor and make it more palatable; and is not applied to anything which is eaten, alone or with a bit of bread, either for its own sake only, or to stimulate the appetite for other food to be eaten afterwards. For instance, cheese eaten with bread, or ham or chicken eaten in a sandwich, or anchovies or herrings, caviare or shreds of salt fish, eaten, whether with or without bread, as an appetizer before a meal, would hardly be called a sauce.

that this definition of the common meaning of the term "sauce" has been followed, not only by the Supreme Court of the United States, but by this court, in such cases as *United States* v. *Neuman & Schwiers Co., Inc., supra;* that the Congress adopted and gave that interpretation and construction its legislative sanction and approval by continuing to use the same term or words in eight succeeding tariff and revenue acts, thereby clearly expressing its intent and meaning that the word "sauces" for tariff purposes was to be given its ordinary and common meaning. In support of this contention Government counsel cite: *United States* v. *Basket Importing Co.,* 13 Ct. Cust. Appls. 98, T. D. 40941; *United States* v. *Schmidt,* 13 Ct. Cust. Appls. 252, T. D. 41200; *United States* v. *Tompkins Kiel Marble Co.,* 14 Ct. Cust. Appls. 7, T. D. 41527; and *Caplan & Co.* v. *United States,* 14 Ct. Cust. Appls. 247, T. D. 41875.

From these premises, Government counsel concludes that the term "sauces" is not susceptible of proof of commercial designation.

We have examined the cases relied upon and do not find that they support the contention made by the Government. They were each cases which went off upon common meaning, and have no application here.

In the case of *Bogle* v. *Magone, supra,* the Supreme Court announced in quite positive language that proof of commercial designation was proper in such cases, as follows:

The Circuit Court, in directing a verdict for the defendant, ruled, in substance, that as matter of law, and without regard to commercial usage, these articles came within the words "sauces of all kinds" in the tariff act. We are unable to concur in that view; or to say, either of our judicial knowledge, or in view of the evidence introduced, that these articles are necessarily "sauces" of any kind; still less, that this is so clear as to exclude the usual test of commercial designation. *Cadwalader* v. *Zeh,* 151 U. S. 171, 176.

On the contrary, we are of opinion that the evidence of the nature and the use of these articles, and of their commercial designation, would have warranted a jury in finding that they were not "sauces," and were "fish, preserved or prepared." If that fact were proved, it would follow that, as such, the bloater paste, at least, was subject to the duty of only twenty-five per cent ad valorem; * * *.

Again, in *United States* v. *Meyer & Lange,* 8 Ct. Cust. Appls. 27, T. D. 37163, this court, speaking through Barber, Judge, said, in part:

We have no hesitation in concluding that the term "sauces," in the paragraph under review before us may be given a wider application than that adopted by the board as hereinbefore quoted. To what articles it may be applied, however, obviously may depend upon proof, including that of commercial designation, all to be considered in the light of congressional intent as manifested in other provisions of the tariff law, * * *.

We indicated quite plainly in the *Wile* case, *supra,* that we were of opinion that proof of commercial designation was proper in such cases, and that is the opinion of the court now. Hence, we are unable to concur with the counsel for the Government in its contention and we hold that the term "sauces," as it appears in the statute, is susceptible of proof of commercial designation. It only remains to be seen whether such commercial designation within the meaning of the law has been established.

We have pointed out, on numerous occasions, and did so again in the *Wile* case, *supra,* what the true rule was. This conclusion was based upon a uniform line of authorities from the beginning of the consideration of such cases by the courts of this country. The Supreme Court, in the very early consideration of these matters, as in the noted case of *Two Hundred Chests of Tea,* 9 Wheat. 428, recognized that customs laws were particularly adapted for use by merchants, and that it might well be that commodities which were well known among those who were engaged in the trade, under a certain designation

might not be so known, by those who were not engaged in trade; that the Congress was to be understood as speaking in terms of the trade; and that if an article, although not commonly known as designated by the law, was uniformly, definitely, and generally known by that designation in the trade and commerce of the country, it should be included within the statutory term. This rule has been carried down through the years, continuously. However, as we pointed out in the *Wile* case, *supra*, and in many other cases, it was not intended to include articles within a statutory designation by proof that the article was, in fact, commercially known by some similar name. We have reiterated this doctrine repeatedly. See *Newman-Andrew Co.* v. *United States*, 2 Ct. Cust. Appls. 4, T. D. 31570; *Henderson & Hall* v. *United States*, 4 Ct. Cust. Appls. 327, T. D. 33523; *Hampton, Jr., & Co.* v. *United States*, 12 Ct. Cust. Appls. 490, T. D. 40695; *United States* v. *Walter et al.*, 4 Ct. Cust. Appls. 95, T. D. 33371; *McEnany* v. *United States*, 8 Ct. Cust. Appls. 329, T. D. 37598, and *United States* v. *Hoyt, Shepston & Sciaroni et al.*, 16 Ct. Cust. Appls. 502, T. D. 43236.

The only modification of this doctrine is found in the further rule announced by us in such cases as *Hampton, Jr., & Co.* v. *United States, supra*, and *I. Shalom & Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 85, T. D. 47067, that if the congressional intent is plainly manifested that such commercial meaning shall not be applicable, then the court will follow the congressional intent.

It must be quite evident to all who consider these cases on commercial designation that the courts have never broadened the rule so far as to permit proof of commercial designation of terms other than the precise terms used in the statute. For instance, no authority can be found which permits proof of commercial designation of the statutory term "sauces," by proof that the products were, in fact, called "wine sauces" or "Sauce Bercy" or "Sauce Bordelaise." The rule is, and the authorities are uniform and definite to that effect, that he who relies upon proving commercial designation to bring a certain product within a statutory term, must take the term as it appears in the statute. As an illustration, if, under a certain provision of the statute including the term "sealskin," skins were imported, which the importer offers to prove were known to the trade definitely, generally, and uniformly, as "Hudson seal," it will at once be seen that such proof is immaterial, as it does not establish that the imported skins were within the statutory term "sealskin." "Hudson seal" is a preparation of muskrat, coney, rabbit, or hare skin. Summary of Tariff Information, 1929, vol. 2, p. 1981. To hold otherwise would be to permit all sorts of abuses against the customs.

In view of what has been said, and of the authorities on the question, which we do not consider to be indefinite or hard to understand, let us look at the record in this case. Ten witnesses, well qualified,

have testified that the imported goods in question were uniformly, definitely, and generally designated as "sauces" at and prior to the passage of the Tariff Act of 1930. There is no contradiction of this testimony. This testimony, therefore, has brought the imported material within the meaning of the statutory term "sauces," and commercial designation has been established. What the imported material may have been used for is, so far as this inquiry is concerned, immaterial. If it affects anything at all, it is not the commercial designation of the term.

Being of the opinion that commercial designation has been established, we conclude that the United States Customs Court was in error, and its judgment is *reversed* and the cause *remanded* for further proceedings in conformity herewith.