UNITED STATES. *v.* H. J. HEINZ Co. (No. 4128)[1]
H. J. HEINZ Co. *v.* UNITED STATES (No. 4129)[1]

---

[1] T. D. 49557.

United States Court of Customs and Patent Appeals, April 4, 1938

*Charles D. Lawrence*, Acting Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.

*Jerome G. Clifford* (*Thomas J. McKenna* of counsel) for Heinz Co.

[Oral argument February 10, 1938, by Mr. McDermott and Mr. McKenna]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court: [2]

These are cross-appeals from a judgment of the United States Customs Court, Third Division.

In the latter part of 1934 H. J. Heinz Co. made a number of importations of merchandise invoiced as "Tomato 'B' Sauce." The importations came from Canada and were entered at the port of Pittsburgh, Pa. The Collector of Customs classified the merchandise under paragraph 772 of the Tariff Act of 1930 as "Tomatoes * * * prepared or preserved in any manner," duty being assessed and collected at 50 per centum ad valorem. The importer brought suits for recovery of a part of the duties paid by filing two protests. The two suits were consolidated for trial, the issues being the same in both cases. In the protests were alternative claims, the two claims relied upon being for classification either under that portion of paragraph 775 of the act which provides for "sauces of all kinds, not specially provided for" at 35 per centum ad valorem, or under paragraph 1558 of the act as "articles manufactured" with duty assessment at 20 per centum ad valorem.

The trial court sustained the claim under paragraph 775. The Government appealed, asserting the correctness of the collector's classification. The importer cross-appealed in order to enable it to make its alternative claim under paragraph 1558.

The pertinent parts of the respective paragraphs at issue read:

PAR. 772. Tomatoes in their natural state, 3 cents per pound; prepared or preserved in any manner, 50 per centum ad valorem.

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; sauces of all kinds, not specially provided for; soy beans, prepared or preserved in any manner; bean stick, miso, bean cake, and similar products, not specially provided for; soups, soup rolls, soup tablets or cubes, and other soup preparations, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, 35 per centum ad valorem * * *.

PAR. 1558. That there shall be levied, collected, and paid on the importation of * * * all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

It appears from the record that the Heinz Co. manufactured the imported product at a plant owned and operated by it at Leamington, Ontario, Canada, in the same manner that it manufactures a similar product at some of its plants in the United States and that it is not placed on the market in its imported or manufactured form—that is, it is not sold in that form to anyone, but is used solely by the Heinz Co. in the preparation of its product of baked beans and pork. Samples of the merchandise in the form imported were placed in evidence as were samples of the beans and pork product. The label upon the latter contains the statement:

Oven Baked Beans with Pork and Tomato Sauce

Select Beans and Pork Prepared with Tomato Sauce After Our Own Recipe, Containing Tomatoes, Onions, Sugar, Salt, Heinz Distilled Vinegar and Spices.

Mr. Herbert N. Riley, chief chemist in charge of the manufacturing processes of the importing company, in which he is a director, gave the following description of the manufacture of the merchandise at issue:

The tomatoes are received at the factory from the farmers, and they are washed, assorted, and defective parts trimmed out, and are then scalded, after which they are screened to remove the seed, skin, and core content of the tomato. The liquid remaining from this screening operation is pumped to the kitchen where it is placed in a 250 gallon steam jacketed kettle. A batch consists of 120 gallons, or approximately, depending on the character of the thin pulp gotten from the whole tomato. To this pulp is added the 50 pounds of sugar, 12 pounds of onions, garlic, and various spices, and the mass is boiled down to approximately 80 gallons, at which time vinegar is added. After the vinegar is added, the cooking process is continued until we have the mass reduced to a standard consistency of which is usually reached when the batch will yield 52 gallons, or very nearly that amount. After this cooking operation is complete, the product is again sieved to remove the onions, the garlic, and the whole spice, so that we have when we are through, a finished sauce which is dropped to the floor below, and filled into suitable containers for our purpose, usually 5 gallon cans. Although at times it may be filled into a one gallon container. * * *

Elsewhere the witness stated that the product is made by a secret formula; that in the concentrated form in which imported, it is a "complete sauce"; that in using it with the pork and beans product,

"We dilute it with water, add salt, pepper, and a slight amount of arrow root. Put it on the beans when we prepare the beans * * * To make the beans taste better"; that as imported, it is not a commercial product, but one designed solely to be used with the Heinz Co. baked beans product.

There were admitted in evidence certain chemical analyses of the merchandise made on behalf of the respective parties. These do not materially differ. The opinion of the trial court says:

The importer's chemist's report shows 2.32 per centum of the substance to be protein, while the Government chemist assigned 3 per centum of the commodity to tomato pulp. Whether the substance designated as protein is more nearly an element than tomato pulp we are unable to say, nor, as stated before, do we think it makes any material difference in this case. In the testimony produced by the plaintiff it was admitted that a chemical analysis would not disclose the existence of products like tomatoes, cabbage, carrots, peas, and onion; that a food product could not be detected in a chemical.

Only two cases arising under the Tariff Act of 1930 in which tomato products were involved have been before this court.

The first case was that of *Columbo Co., Antonio Badalament* v. *United States*, 21 C. C. P. A. (Customs) 302, T. D. 46819. The product there involved is described in our opinion as having been prepared in the following manner:

Mashed ripe tomatoes are strained through a sieve into a cheesecloth bag, and permitted to drain for a period of 24 hours or more, "it is left in these cheesecloth bags and is boiled down. Then it is highly salted, put on platters, and laid in the sun until it comes of a consistency that can be easily handled by hand." Exhibit 1, which is representative of the merchandise, is soft and plastic, and, no doubt, properly denominated a paste.

It appears from Exhibit 2, the report of a Government chemist, that the involved paste "is composed of partially dried tomatoes or tomato pulp chiefly, salt and a small amount of spices. Salt—15.4%."

There was no claim in that case under the provision for sauces in paragraph 775, *supra*, and we had no occasion to consider the applicability of that provision. The issue in the final anlysis was whether the merchandise was classifiable as tomatoes prepared or preserved in any manner, or as pastes composed of vegetables under paragraph 775. No vegetables other than tomatoes were shown to have entered into the composition. It was held, in effect, that the importer had failed to overcome the presumption of correctness attaching to the collector's classification.

The second case was that of *Del Gaizo Distributing Corp.* v. *United States*, 24 C. C. P. A. (Customs) 65, T. D. 48376. In that case the merchandise was similar to that involved in the *Columbo Co. et al.* case, *supra* (and similar to merchandise involved in several prior cases cited in our opinion in the *Del Gaizo Distributing Corp.* case, *supra*, arising under prior tariff acts), but, in addition to a claim that the mer-

chandise was "paste" there was also a claim that it was "sauce," classifiable under paragraph 775, *supra*. We there found that the merchandise contained "no ingredient other than tomatoes, except that in some instances a negligible amount of flavoring, 'such as a basil leaf' is added." That salt was present may be assumed since the merchandise was similar to that involved in the first case. As in the *Columbo Co. et al.* case, *supra*, it was held that the importer had failed to overcome the presumption of correctness attaching to the collector's classification.

From the description of the merchandise here involved, quoted *supra*, it immediately will be seen that it differs materially from the merchandise involved in the two cases last cited. In those cases the product consisted of dried tomatoes or tomato pulp, salt (15.4 per centum) and a small amount of spices. No vegetable (spices not being regarded as vegetables) other than tomatoes entered into its composition. Tomatoes constituted the basis of the product here involved, but in the process of manufacture other vegetables were added—onions and garlic. Also, an appreciable quantity of sugar was used along with some spices, and, at a particular stage of the boiling, vinegar, of a kind manufactured by importer, was introduced.

There is also in this case definite and uncontradicted testimony showing the particular use of the involved product. In the *Columbo Co. et al.* case, *supra*, no evidence as to the use of the product there involved was shown, and this was emphasized in our opinion in that case.

In the *Del Gaizo Distributing Corp.* case, *supra*, there was testimony as to the use of the product. It was summarized in our opinion there in the following language:

The use which is shown of the involved merchandise by the testimony of practically all the chefs called as witnesses for the importers is "in soups, tomato, cream of tomato, puree of tomato, and in the *preparation of many sauces* [italics ours], such as "sauce Aurore," "sauce Figaro and Tyrolienne," and "to make goulash or ragout." Several of the witnesses, testifying as experts, declared flatly that the material is not a sauce in the common meaning of the term, and no witness testified that it is a sauce.

The difference in uses of the product there involved and that here involved is apparent from the parts of the record already quoted. The product here involved is not used in the preparation of soups, tomato, cream of tomato, puree of tomato, nor is it used in the preparation of sauces.

It may be added that in the last-named case a question of commercial designation was involved. We there pointed out, with citation of authorities, that where Congress uses the words "of all kinds" in connection with merchandise, the rule of "commercial designation," as distinguished from common meaning, is excluded, and held that the

phrase "in the same manner" had the same effect in the case of the merchandise there involved.

In the view which we take of this case, it is unnecessary to review the several decisions in cases which arose under tariff acts prior to that of 1930.

In their brief and argument before us, counsel for the Government advanced a number of contentions and cited certain legislative history respecting the increase in duty on tomatoes provided in the Tariff Act of 1930.

It is contended by counsel for the Government, first, that "There is no proof in the record that the merchandise * * * is commonly or commercially known as 'sauce'." If by "commercially," it is meant that the rule of commercial designation might have been invoked, that seems to be answered by the holding in *Del Gaizo Distributing Corp.* case, *supra.* So far as the common meaning of the term "sauce" is concerned, that is a question for the courts to determine. It may be said, however, that importer's witness Riley constantly referred to the merchandise as a sauce, testifying that as imported it was a complete sauce in a concentrated form. Furthermore, there is proof as to the nature of the merchandise, the manner of its manufacture and the use which is made of it. Also, a sample of the merchandise is in evidence. It seems to us that the really essential facts necessary for a determination of what the product is are amply shown.

In the case of *Bogle* v. *Magone,* 152 U. S. 623, the Supreme Court of the United States stated a definition of "sauce" which has been consistently adhered to by all courts having to do with customs questions, ever since its promulgation. It was there said:

The word "sauce," as commonly used, designates a condiment, generally but not always of liquid form, eaten as an addition to and together with a dish of food, to give it flavor and make it more palatable; and is not applied to anything which is eaten, alone or with a bit of bread, either for its own sake only, or to stimulate the appetite for other food to be eaten afterwards. For instance, cheese eaten with bread, or ham or chicken eaten in a sandwich, or anchovies or herrings, caviare or shreds of salt fish, eaten, whether with or without bread, as an appetizer before a meal, would hardly be called a sauce.

It seems to us that by the record in this case, the involved merchandise is shown to fall within the definition so given. Certainly, it is shown that the product is prepared to be "eaten as an addition to and together with a dish of food, to give it flavor and make it more palatable," and not "alone or with a bit of bread, either for its own sake only, or to stimulate the appetite for other food to be eaten afterwards." True, it is not a table sauce in the sense that it is placed upon the table and applied to food after the latter has been there served. It is mixed with the food as the same is being prepared. This fact does not, in our opinion, change the nature of the sauce,

nor does the fact that in use it is diluted by the addition of water with salt, pepper, and a slight amount of arrow root added (all being, with the possible exception of arrow root, elements present in its original composition), affect the question.

As to the Government's insistence that the merchandise is specifically provided for under the tomato paragraph, it seems sufficient to refer again to the fact that substantial quantities of other vegetables entered its composition.

Another suggestion in the brief on behalf of the Government is that if it be not *eo nomine* provided for under paragraph 772, it nevertheless is dutiable under the provisions of that paragraph by reason of the similitude provision of paragraph 1559 of the Tariff Act of 1930. Although advanced, this suggestion was not seriously pressed. We do not regard it as sound for reasons that seem so obvious as not to require discussion.

Another suggestion of counsel for the Government is that if the merchandise is found to be provided for not only as classified by the collector, but also under either claim of the importer, the collector's classification must be sustained by reason of another provision in paragraph 1559, reading:

* * * If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

As to this, it is sufficient to say that we do not regard the collector's classification as correct.

With respect to the legislative history, it is the well-settled rule that resort to such history will be had only in cases where there is ambiguity in the statutes being applied. So far as the merchandise here is concerned, we think it is clearly shown to be a sauce, and, as applied to it, the statutes are not ambiguous.

There is no necessity for discussion of the claim under paragraph 1558.

The judgment of the United States Customs Court is *affirmed*.