(C. D. 158)

HERRON ZIMMERS MOULDING Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 8, 1939)

Tompkins & Tompkins (J. Stuart Tompkins of counsel) for the plaintiff.

Charles D. Lawrence, Acting Assistant Attorney General (Richard F. Fitz-Gibbon, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at the port of Detroit, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of grooved pieces of aluminum manufactured by a so-called extrusion-die process and imported in 12- and 16-foot lengths. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as articles not specially provided for composed wholly or in chief value of aluminum. It is claimed that said articles are properly dutiable at but 7 cents per pound under the provision in paragraph 374 of said act for "aluminum * * * in * * * bars, * * * strips."

A sample of a portion of one of the strips representing the imported merchandise was admitted in evidence as Exhibit 1.

The plaintiff offered the testimony of a single witness. No evidence was introduced by the Government.

The witness, Cecil Henry Blomfield, an employee of the plaintiff corporation, testified that the imported merchandise represented by Exhibit 1 is manufactured by forcing melted aluminum through a specially made die under pressure; that after importation holes are pierced therein either by hand or by an automatic press; and that it is then cut to a definite length, as determined by the customer.

The witness then produced a similar piece of aluminum strip with two holes punched in it, which was admitted in evidence as Illustrative Exhibit A. He then testified that the holes are punched in the aluminum strips as specified by the customer; that after the holes are punched a filler composed of artificial leather-covered rubber (a sample of which was admitted in evidence as Illustrative Exhibit B) is inserted in the groove; that the finished article is used as a moulding around automobiles or as a metal trimming for tables, walls, doors, trunks, and suitcases; and that he sold the strips in their imported condition as aluminum bars.

On cross-examination he testified that when used as a moulding the merchandise is nailed to the wall before the filler (Illustrative Exhibit B) is inserted, and that the purpose of punching the holes was to permit the nailing of the moulding to the wall.

Upon this record counsel for the plaintiff, in their brief filed herein, contend that the imported merchandise after importation is cut into strips and pierced with nail holes as specified by the purchasers; and that it is not, therefore, a manufacture of aluminum but merely aluminum material in strips or bars.

We do not agree with this contention. An examination of Exhibit 1, together with the uncontradicted testimony regarding its manufacture, convinces us that the merchandise has been advanced beyond the stage of material and is a manufactured article, to wit, aluminum moulding partly manufactured.

We have carefully examined the cases cited by counsel for the plaintiff and in our opinion none of them is here applicable. We are of the opinion that the decision in *Universal Shipping Co. et al.* v. *United States,* 4 Ct. Cust. Appls. 245, T. D. 33479, is exactly in point and here controlling. That case involved the question of the dutiable classification of aluminum in two forms, one square and the other circular. They were both assessed with duty under the provision in paragraph 172 of the Tariff Act of 1909 as aluminum in sheets or bars. It was claimed that the articles were properly dutiable under paragraph 199 of said act as articles composed of aluminum partly or wholly manufactured. In sustaining the contention of the importers, the appellate court said:

We agree with the contention of the importers that these are not sheets of aluminum within the meaning of paragraph 172 when that paragraph is considered in contrast with paragraph 199. The term "sheets" is ordinarily applied to a broad general surface, and in the connection in which it is used in paragraph 172 may fairly be said to mean the sheet of the metal made in that form as one of the developments in the process of manufacture, and not intended to include the articles made from such sheets. So as to the word "plate" in the case of Newman-Andrew Co. v. United States (2 Ct. Cust. Appls., 4; T. D. 31570), we cited with approval the definition from Lockwood's Dictionary of Engineering Terms that there given, namely, "a broad, thin sheet of metal." The Century Dictionary describes sheet as "a broad, usually flat, and relatively thin piece of anything," the Standard as "a very thin and broad piece of any substance," and Webster, "in general, any broad, uninterrupted expanse; a broad, thinly expanded portion of metal or other substance."

That these articles were once in the form of sheets is apparent. But they have been advanced beyond that state, and have become articles or wares composed wholly of aluminum, partly manufactured.

Also in point is the more recent case of *United States* v. *Henry L. Exstein Co., Inc.,* 16 Ct. Cust. Appls. 328, T. D. 43079. There the merchandise involved was so-called deformed steel bars. The appellate court classified them as structural shapes of steel because the ridges or protuberances on the surface thereof were so placed and spaced as to make such bars adaptable for use in concrete reinforcing work.

Upon the established facts and the law applicable thereto we hold that the aluminum articles in question are properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as articles not specially provided for composed wholly or in chief value of aluminum, as classified by the collector. All claims of the plaintiff are therefore overruled and judgment will be rendered accordingly.