HENLEY & CO., INC. *v.* UNITED STATES (No. 5066)*

United States Court of Customs and Patent Appeals, March 9, 1962

*Eugene R. Pickrell* (*George E. Long,* of counsel) for appellant.
*William H. Orrick, Jr.,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section, for the United States.

[Oral argument November 15, 1961, by Mr. Pickrell and Mr. FitzGibbon]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, C.D. 2215, overruling the importer's protest and holding the imported merchandise, "Scopolamine N-Oxide Hydrobromide," correctly classified under paragraph 5, Tariff Act of 1930, as modified by the Torquay Protocol to GATT, T.D. 52739, as "medicinal preparations * * * not specially provided for."

The importer claims classification under paragraph 45 of said Act as "Bromine and all bromine compounds not specially provided for."

The judgment of the Customs Court was based on the following stipulation of facts:

* * * that the merchandise covered by this protest is Scopolamine N-Oxide Hydrobromide; that it is chiefly used as a medicinal preparation and is ready for administration in the condition as imported; that said merchandise is a bromine compound, and that the number of bromine compounds is smaller than the number of medicinal preparations.

Appellant's argument against the collector's classification proceeds as follows: (1) where an item can be classified under different paragraphs, the proper classification is under that paragraph which is the least easily satisfied; (2) since it has been stipulated that there is a smaller number of bromine compounds than medicinal preparations, the provision for all bromine compounds in paragraph

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294 (d), Title 28, United States Code.

*C.A.D. 793.

45 is less easily satisfied and, therefore, must be held to be more specific.

It appears to us that appellant, mistakenly, places too great emphasis on the stipulation that the number of medicinal preparations is greater than the number of bromine compounds, i.e., he places too great emphasis on the total number of articles that paragraphs 5 and 45, respectively, might comprehend.

To support his position, appellant cites *Fink* v. *United States*, 170 U.S. 584. In the *Fink* case, the competing paragraphs were paragraph 74 for "medicinal preparations" containing or made with alcohol and paragraph 76 for "chemical compounds and salts," Tariff Act of 1890.

The *Fink* case supports appellant's claim only if it can be said that in that case there was a determination that the number of chemical salts was greater than the number of medicinal preparations and that *this was the reason* the Court held the imported article to be more specifically classifiable under paragraph 74. Appellant, apparently assuming that such was the situation, concludes that since in the instant case the number of medicinal preparations has been *stipulated* to be greater than the number of bromine compounds, the instant compound should be classified under paragraph 45 as bromine compounds.

We feel that this argument is specious. The Court in the *Fink* case made no determination of the relative numbers of chemical salts and medicinal preparations. In fact, the *record* in the *Fink* case indicated that such a determination would have been impossible. The certificate and questions in the record certified to the Court by the Court of Appeals of the Second Circuit included, in part, the following statements (170 U.S. at 586) :

> The number of chemical salts is excessively large. A very small proportion of this number is used in medicine or as medicinal preparations. *There is no adequate testimony in regard to the relative number of imported or importable medicinal preparations in the preparation of which alcohol is used, and of imported or importable chemical salts. The testimony does not disclose which paragraph includes the greater number of articles.* [Emphasis ours.]

The Court's opinion never refers to these statements. The reasoning of the Court was, instead, directed toward the "article in question" and determining which of the two paragraphs involved was *more definite with respect to that article*. The relative number of articles in general which these paragraphs might possibly have comprehended was not indicated to be a relevant consideration.

What the *Court* in the *Fink* case said was (pages 586–7) :

> There can be no doubt that the article in question from some points of consideration might be classified under either of the paragraphs of the statute referred to in the certificate. Thus, within the purview of paragraph 74, it is

obviously a medical preparation, in the preparation of which alcohol is used. It is also equally clear that it is likewise, chemically speaking, a salt, and hence within the reach of paragraph 76. It would then follow that if either of the paragraphs stood alone in the statute, disembarrassed of the provisions found in the other, the preparation might properly come under the head of either. Being reached, then, in some of its aspects by some of the provisions found in both paragraphs, the question is, which, if either of the two, is so dominant in its control *of the article in question* as to exclude the operation thereon of the other. The rule is that this, if possible, is to be determined by ascertaining whether one of the two paragraphs is more definite in its application *to the article in question* than is the other. *Isaac* v. *Jonas,* 148 U.S. 648; *Bogle* v. *Magone,* 152 U.S. 623. Being a medicinal preparation, made as such and solely *used* as a medicine, the language of paragraph 74 clearly more definitely applies to it than does the generic provision "of chemical compounds and salts" found in paragraph 76. *Magone* v. *Heller,* 150 U.S. 70; *Robertson* v. *Salomon,* 130 U.S. 412. * * * [Emphasis ours.]

The issue before this court, accordingly, is which of the two competing provisions, in paragraphs 5 and 45, is the more specific with respect to the imported compound, irrespective of the number of compounds in general which these paragraphs, respectively, might comprehend.

The essence of the Customs Court's opinion was set forth as follows:

In determining the application of the rule of relative specificity to the involved merchandise, the fact that it has been conceded in the case at bar that the number of bromine compounds is smaller than the number of medicinal preparations, does not in itself subject the importation to classification under paragraph 45 of the act, as claimed by the plaintiff herein. The provision for "all medicinal preparations" is equivalent to an enumeration of every medicinal preparation, not otherwise specifically provided for by name. *Merck & Co.* v. *United States,* 6 Ct. Cust. Appls. 41, T.D. 35315. *In our opinion, the controlling factor in the determination of the issue in this case is that the provision for "all medicinal preparations" is a designation by use.* [Emphasis ours.]

The Customs Court deemed controlling the holding of this court in *Sandoz Chemical Works, Inc.* v. *United States,* 43 CCPA 152, C.A.D. 623, quoting the following passages therefrom:

In determining relative specificity, it is well settled that a designation by a specific use prevails over a designation of general character without special limitation as to use or other qualification. *Drakenfeld & Co.* v. *United States,* 9 Ct. Cust. Appls. 124, T.D. 37979, and cases cited therein.

In the present case, it can readily be seen that paragraph 28(a), *supra,* relates to use whereas paragraph 45, *supra,* relates to general character. Therefore, in view of the above-cited law, we are of the opinion that the imported homatropine hydrobromide was properly classified under paragraph 28(a), *supra.*

The Customs Court then concluded its analysis of the *Sandoz* case by saying:

The *Sandoz Chemical* case turned upon the fact that the provision in paragraph 5, *supra,* for "other medicinals" was a use provision and thus more specific *in its application to the product there imported* than the provision in paragraph 45 for "bromine compounds." [Emphasis ours.]

Appellant seeks to distinguish the *Sandoz* case in the following manner:

In the *Sandoz* case, *supra*, it was held that the provision for coal-tar medicinals in Paragraph 28(a) was more specific than the provision for bromine compounds in Paragraph 45. However, no evidence was presented as to whether the number of bromine compounds was greater or less than the number of coal-tar medicinals. In the instant case, it has been stipulated that the "number of bromine compounds is smaller than the number of medicinal preparations."

Appellant states in its brief that "the Court below failed to comment on appellant's claim that the issue should be determined by the ruling by this Court in *United States* v. *Electrolux Corporation*, 46 C.C.P.A. (Customs) 143, C.A.D. 718," indicating apparently that this court's decision in the *Electrolux* case emasculated to a great extent the efficacy of "use" designations as aids in construing the true meaning of tariff provisions. We did not intend by our statements in the *Electrolux* case to lay down a new test for relative specificity, especially one, as indicated above in our discussion of the *Fink* case, which could be applied by counting the number of items comprehended by competing provisions.

What we did say in the *Electrolux* case was:

While it is true that this court and its predecessor on many occasions have held that a use provision *should* prevail over some other, and have used the word "doctrine" in referring to the "doctrine of use," an examination of a sufficient number of cases will show that this so-called doctrine is subject to "exceptions" whenever it comes into conflict either with *a clearly expressed legislative intent or a competing provision which is obviously more specific than the "use" provision, as applied to the merchandise at bar*. Actually, the "doctrine" appears to be convenient rule of thumb for resolving issues where the competing provisions are otherwise in balance. [Emphasis added.]

\* \* \* \* \* \* \*

We therefore disagree with appellant, on a review of the cases, that there is any imperative in what it chooses to regard as a "firmly established" doctrine of use which requires us to classify electric floor polishers as household utensils in paragraph 339. The rule is no more than an aid to construction and one aspect of the broader rule of relative specificity.

We have considered appellant's arguments based on so-called "legislative history" of paragraph 45, which are predicated on statements in the 1921 and 1929 Summaries of Tariff Information which show that some bromine compounds are used in medicine. They also show that bromine compounds may be used in photography and analytical chemistry. We are unable to gather therefrom, or from our own investigation of the legislative history of this paragraph, any indication of a Congressional intent to include medicinal compounds, which happen to be bromine compounds, in paragraph 45.

Considering, therefore, the provisions of paragraphs 5 and 45 as they overlap with respect to the goods at bar, we find first that the "medicinal preparations" provision of paragraph 5 is a "use" provi-

sion and that paragraph 45 contains no such provision. Secondly, the paragraph 45 provision for "bromine compounds" is not "obviously more specific than the 'use' provision" of paragraph 5 because the former, even if considered an "eo nomine" provision, is still a broad class designation. In this regard appellant relies on *McKesson Western Wholesale Drug Co.* v. *United States*, 65 T.D. 955, T.D. 47098, where the court had before it a question of the relative specificity of the terms "medicinal preparations" and "Epsom salts" the latter being a true eo nomine and obviously more specific provision. That case cannot aid us here.

It is our opinion that the instant compound, which is made and chiefly used as a medicinal preparation, is more specifically and definitely classified by the provision for "medicinal preparations," n.s.p.f., in paragraph 5 than by the broad class provision for "bromine compounds," n.s.p.f., in paragraph 45.

Appellant also cites in support of its claim *Beiersdorf & Co., Inc.* v. *United States*, 31 CCPA 158, C.A.D. 267, and *Roche-Organon, Inc.* v. *United States*, 35 CCPA 99, C.A.D. 378. We have carefully considered these decisions and find nothing in them inconsistent with our present decision.

The judgment of the Customs Court is *affirmed*.